**M. J. TIAN, Appellant,**

v.

**T. C. WARREN et al., Appellees.**

No. 12632.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 8, 1954.

Rehearing Denied Oct. 6, 1954.

· J. P. Darrouzet, Austin, Joe Burkett, San Antonio, for appellant.

Henry Lee Taylor, Leonard Brown, San Antonio, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted in the District Court of Bexar County by M. J. Tian against T. C. Warren and C. G. Benham, seeking to set aside a real estate transaction involving the exchange of real estate belonging to Tian and located in Caldwell County for real estate located in Limestone County, belonging to Benham. Tian alleged that he had been induced to make the exchange through fraudulent representations made to him by C. G. Benham and his agent, T. C. Warren. Tian also asked for damages such as are provided for by Article 4004, Vernon's Ann.Civ.Stats.

The cause was submitted to a jury on 98 special issues and, based upon the jury's answers to such issues, judgment was rendered by the trial court in favor of the defendants, from which judgment M. J. Tian has prosecuted this appeal.

■ Appellant's first point relates to the refusal of the court to admit in evidence a tally of pecan trees made by Sid Erickson. The property which Tian received in exchange, in Limestone County, was supposed to be a productive pecan orchard. Two persons, John Knopff and Sid Erickson, checked this orchard for the purpose of determining how many good trees remained in the orchard and how many were dead and injured. John Knopff was permitted to testify to the result of his check of a part of the orchard, but the court refused to permit him to state the result of Sid Erickson's checking. In this the court was correct. Erickson made the check and counted the trees, and until he testified that such tallying was correct it was not admissible in evidence. It was hearsay insofar as Knopff was concerned.

■ Appellant's ·next point complains of the court's refusal to admit in evidence the alleged deposition of T. C. Warren for impeachment purposes. The deposition was not signed by T. C. Warren and therefore did not comply with the requirements of Rule 209, Texas Rules of Civil Procedure. The alleged deposition was used for the purpose of impeaching witnesses by reading to them certain questions and answers, but the deposition itself was properly excluded from evidence.

Appellant's third point relates to the alleged misconduct of the jury in that they agreed, before any issues were answered, that they would be governed .by a two-thirds majority of the jury. The jury had considered a few of the questions and had been unable to agree upon any answers, when one of the jurors suggested that they be governed by the will of a majority of the jurors in answering the question. Some of the jurors voiced the opinion that such conduct would not be proper, and one of the jurors asked the bailiff if they might answer the questions by a majority vote of the jury. The bailiff expressed the opinion that they might do so by a two-thirds majority vote, whereupon the jury, before they had answered any of the questions, voted unanimously that they would be governed by a two-thirds vote of the jury. After the jury had unanimously adopted this two-thirds rule, the foreman read out each question, gave time for a discussion and then called for a vote. If as many as eight jurors voted for a given answer it was written down as an answer of the jury. If it was less than eight votes the question was again voted on, and if there was not a two-thirds majority the same procedure was again engaged in. The foreman stated that only on one or two occasions was it necessary to take a third vote. All ninety-eight issues were answered in this manner. Before the jury went into court to present the verdict the foreman asked them if they were all satisfied with their answers and they all stated that they were. When they reported before the judge, each individual juror was asked if the verdict was his verdict, and they all stated that it was both individually and collectively, whereupon the verdict was received by the court.

■ The foreman stated that on about eleven per cent of the questions the jury voted unanimously for the answer adopted, but he was unable to say which questions were answered by a vote of less than a unanimous vote. Some of the questions were answered by an eight to four vote, some by a nine to three, some by a ten to two, and others by eleven to one. It is jury misconduct for a jury to answer any issue submitted to them by less than a unanimous vote, and where a jury, before they answer any of the issues, agrees to answer by a two-thirds majority vote the jury is guilty of misconduct. McDonald's Texas Civil Procedure, Vol. 3, § 14.13; Kindy v. Willingham, 146 Tex. 548, 209 S.W.2d 585.

■ There is no question here that misconduct occurred, and this brings us to the question of whether or not it probably resulted in prejudice to appellant. We conclude that it did. The firm agreement was made to be governed by a two-thirds vote of the jury, and the fact that the jurors expressed no dissatisfaction with the verdict when it was presented in open court, showed nothing more than a willingness to be bound by the agreement which they had entered into. The record shows that the jury had not been able to answer a single question until the agreement to be bound by a two-thirds vote was made, and thereafter the questions were apparently answered with little difficulty. As the foreman stated, he would call for a show of hands on a question, and if as many as eight jurors raised their hands the question was answered. So if eight of the jurors voted for an answer, under their agreement, it made no difference how the other four voted. When the foreman would call for a vote and as many as eight jurors put up their hands, then the other four may have simply raised their hands in keeping with their agreement to be governed by a two-thirds vote. We are therefore unable to tell from the record if any of the votes were actually unanimous. In Boddeker v. Olschewaske, 127 Tex. 598, 94 S.W.2d 730, it was held that if the jury has taken a vote and it appears that a majority of the jury are in favor of answering a question in a certain manner, then the minority group may agree to go along with the majority and such agreement would not be misconduct. But we have quite a different situation here. The agreement to be bound was made before a vote was taken, and before it was known how the majority of the jurors would vote.

■ There were other acts of jury misconduct complained of. One was to the effect that the foreman of the jury was permitted to separate himself from the jury, to go into the court room and read the deposition of C. G. Benham, and then return to the jury and further discuss what the deposition showed. Another complaint was that Juror Caruth stated to the jury during its deliberations his personal experience with pecan trees and aerial photographs. The Juror Bradford also gave his personal experience with pecan trees. Under all of the circumstances the appellant, Tian, did not receive a fair and impartial trial before the jury such as is guaranteed to a litigant. Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302.

■ Appellee contends that, regardless of the jury misconduct, he should have judgment in his favor because an instructed verdict would have been proper. Appellee points out that appellant was not entitled to cancellation and rescission, because he was not in a position to make restitution. However, appellant prayed in the alternative for damages such as are provided for by the provisions of Article 4004, Vernon's Ann.Civ.Stats., and the recovery of such damages does not depend upon appellant's ability to make restitution. As to this alternative relief an instructed verdict would not have been proper.

The judgment is reversed and the cause remanded.