Cecil A. THOMAS, Appellant,

v.

The KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellee.

No. 6127.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 19, 1957.

Rehearing Denied Oct. 9, 1957.

Jacobs & Schmidt, Houston, Harold Peterson, Beaumont, for appellant.

Orgain, Bell & Tucker, Beaumont, for appellee.

ANDERSON, Justice.

While working for appellee railway company as a brakeman, appellant fell from the side of a moving gondola car and was injured. This occurred about 2:50 a. m., on October 16, 1955, while both the appellant and the appellee were engaged in interstate commerce. Appellant, who will also be referred to as plaintiff, brought suit for damages, charging the defendant with both negligence and a violation of the Safety Appliance Acts, 45 U.S.C.A. §§ 1–16. A jury answered all special issues pertaining to negligence in favor of the defendant, and further found that the plaintiff fell as the result of an unavoidable accident. However, it answered all issues pertaining to the alleged violation of the Safety Appliance Acts in favor of the plaintiff, and assessed damages in the amount of $50,300. Both parties made motion for judgment on the verdict. The defendant also made motion, in the alternative, for judgment non obstante veredicto, and motion that such of the jury's answers as were favorable to the plaintiff be disregarded. Plaintiff's motion and defendant's alternative motions were overruled; defendant's motion for judgment on the verdict was granted; and judgment was rendered that the plaintiff take nothing. The appeal followed.

There is but one question to be decided. It is that of whether the trial court erred in overruling the plaintiff's motion for judgment on the verdict of the jury, in granting the defendant's, and in rendering judgment accordingly.

The answer lies in whether a board that split and caused appellant to fall was something the Safety Appliance Acts required appellee to have in secure condition.

The board lay along the top of a side wall of the gondola car, at the head of a side ladder, and was fastened in place by bolts. It split and partly gave way when appellant grasped its inner edge while ascending the ladder in the discharge of his duties, and appellant was cast to the ground.

The car from which appellant fell was constructed of steel and was one of a number of similar cars used in hauling raw sulphur. To reduce the fire hazard, and apparently at the behest of sulphur shippers, the cars had been lined inside with oak planks, and a cap of oak boards or timbers had been placed atop the side and end walls. Except where they crossed the heads of ladders, the capping boards or timbers were approximately 5 x 7″ in size. Where they crossed the heads of ladders, they were thinner, having apparently been only two inches or a little more in thickness. The board that gave way with appellant was a short piece of board of the lesser thickness. Its length approximated the width of the ladder.

The plaintiff charged in his petition that the board was a handhold within the purview of the following provision of the Safety Appliance Acts:

"§ 4. Grab irons or handholds for security in coupling and uncoupling cars

"Until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." 45 U.S.C.A. § 4, Act March 2, 1893, c. 196, § 4, 27 Stat. 531.

However, he has at no time taken the position that the board was a handhold or other safety appliance prescribed by the Interstate Commerce Commission under authority of 45 U.S.C.A. § 12; and it is undisputed that the car from which he fell was equipped with all standardized safety appliances prescribed by the Interstate Commerce Commission for cars of its class, and they were all secure.

The jury found that the board was "in effect a handhold that could be used by switchmen in coupling and uncoupling

cars"; that it was not secure; and that its insecure condition "contributed in whole or in part to cause" appellant's injuries. It also found that the board was a "dangerous instrumentality with which to work."

The record does not expressly reflect the fact, but these findings were nonetheless disregarded by the trial court in rendering judgment. They appear, however, to have been disregarded because they were thought to be immaterial rather than because there was thought to be no evidence to support them. In other words, as we understand the record, the trial judge concluded that, as a matter of law, the board that gave way with appellant was not a grab iron or handhold within the scope of the above-quoted provision of the Safety Appliance Acts.

■ After much deliberation, and with no sure nor even satisfactory guide, we have arrived at the opposite conclusion; i. e., we have concluded that within contemplation of the Safety Appliance Acts the board that gave way with appellant was, as a matter of law, a handhold which appellee was required to have secure.

The board's position rendered it inevitable that frequently, if not invariably, it would be grasped by any one entering or leaving the car by way of the ladder or seeking or departing a position atop the wall of the car or standing high on the ladder or passing from the ladder to its counterpart on the end of the car. And in the absence of another and better explanation, we think it must be inferred that it was in recognition of this fact and with the view of making it easier and safer for people to grasp them that thinner boards were used across the heads of ladders than elsewhere. In addition, the boards at the heads of ladders were regularly used by appellee's employees as handholds, and this practice was known to appellee. The conclusion is inescapable, therefore, that the board that gave way with appellant was both designed and intended as a handhold, and as a practical matter was a handhold, even though considerations other than the installation of a handhold accounted for its being on the car in the first instance.

We encounter no greater difficulty in concluding that the board was a handhold reasonably calculated to contribute toward "greater security to men in coupling and uncoupling cars," if this additional finding is necessary to bring it within the scope of the quoted provision of the Safety Appliance Acts.

■ The Safety Appliance Acts are remedial and are to be liberally construed so as to effectuate their humane purposes. See Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282; Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327. But if the rule were otherwise, we think we still would not be justified in holding that men are to be considered engaged in "coupling and uncoupling cars" only while actually manipulating some part of the coupler itself and that only grab irons or handholds which are immediately accessible to persons actually manipulating the coupler are to be considered within the scope of the statute. Assuming that the coupling or uncoupling of cars is the end result sought, we are of the opinion that within contemplation of the statute one is engaged in that work while doing any incidental thing reasonably necessary to or involved in accomplishment of the ultimate purpose. Such an incidental act may consist of going to a place on the car from which to manipulate the coupler itself, of setting the hand-brake, or of any one of a variety of other things. Any grab iron or handhold with which a car is equipped and which contributes to the greater security of men while thus generally engaged in the work of coupling or uncoupling cars is, in our opinion, within the purview of the statute. The board that gave way with appellant clearly falls into this class. Furthermore, the evidence does not exclude the possibility that the board was accessible to persons in some of the positions from which the coupler could be manipulated and was actually used upon occasion by persons engaged in operating the coupler.

■ The purpose of the Safety Appliance Acts appears to be threefold: (1) To require that cars be equipped with certain safety appliances. (2) To require that safety appliances be secure. (3) To impose absolute responsibility on railway companies for having cars equipped with secure safety appliances. And we think it was the intent of Congress to require that all appliances which may fairly be classified as appliances mentioned in the Acts shall be secure, irrespective of whether the Acts actually require that cars be equipped with the appliances in the first instance. This is in effect the holding in Shields v. Atlantic Coast Line R. Co., 350 U.S. 318, 76 S.Ct. 386, 391, 100 L.Ed. 364, wherein it was said: "If a dome running board is provided by the railroad or the makers of the car and used by the railroad as an appliance necessary for the use of the car, it must be a safe board as required by § 2." Having in mind that the ultimate object of the Acts is to promote the greater security of men working on trains, it would be highly illogical to hold that the absolute responsibility of a company to keep safety appliances secure extends only to those appliances constituting the bare minimum required by the Acts and not to other similar appliances with which cars are in fact equipped and which extend the same invitation to persons to use and rely on them.

■ The fact that the board was not a standardized appliance specifically prescribed by the Interstate Commerce Commission does not preclude a judicial determination that it was nevertheless a safety appliance within contemplation of the Safety Appliance Acts. Shields v. Atlantic Coast Line R. Co., supra, 350 U.S. 318, 76 S.Ct. 386, 100 L.Ed. 364.

Counsel for appellee have ably briefed the case within the limits of available precedents. However, as they apparently recognize, the authorities to which they have referred us are not in point on the facts and are beneficial only in a general way.

The judgment of the trial court is reversed and the cause is remanded with instructions that judgment be rendered in favor of the plaintiff. The remand is pursuant to appellee's alternative motion, in order that the defendant may file and present a motion for new trial. By proper counter point or cross point, appellee has attacked the jury's finding in respect to damages as being contrary to the great weight and preponderance of the evidence and represents that it desires to present this question by motion for new trial. See DeWinne v. Allen, 154 Tex. 316, 277 S.W.2d 95.