J. F. BARDWELL, Jr., Appellant,

v.

T. L. ANDERSON, Appellee.

No. 13199.

Court of Civil Appeals of Texas.

Houston.

May 7, 1959.

Rehearing Denied June 18, 1959.

Second Rehearing Denied July 23, 1959.

932

F. Warren Hicks, Sidney Farr, Houston, for appellant.

Barker, Barker & Simpson, James P. Simpson, Texas City, for appellee.

BELL, Chief Justice.

Appellee, T. L. Anderson, recovered judgment against appellant, J. F. Bardwell, Jr., for $11,604.10. The damages assessed were those resulting from injuries received in an automobile collision by Mrs. Anderson, appellee's wife. The collision occurred at the intersection of 14th Street and Texas Avenue in Texas City on May 31, 1956, shortly after 5 o'clock in the afternoon. It appears that the appellant was driving his automobile north on 14th Street and Mrs. Anderson was driving her automobile east on Texas Avenue. A Mr. Evans was driving his automobile west on Texas Avenue. Appellant's automobile hit the left rear fender of the Evans automobile; Evans lost control of his automobile and it crossed the center of Texas Avenue into the path of Mrs. Anderson's automobile and collided head-on with Mrs. Anderson's automobile. Appellee sued both Evans and appellant. At the conclusion of the testimony, appellee took a non-suit as to Evans, as he had a right to do, since appellant had asked for no affirmative relief

against Evans. The case was submitted to a jury, which convicted appellant of various acts of negligence which were found to be proximate causes of the collision. It is unnecessary to notice them as these findings are not challenged here. The jury convicted Mrs. Anderson of failure to keep a proper lookout and failure to drive her automobile to her right from the path it was traveling. Each of said acts was found to be a proximate cause of the collision. Appellant filed a motion for judgment on the verdict, asserting he was entitled to judgment because of the findings of contributory negligence against Mrs. Anderson. This motion was overruled. Appellee filed a motion asking the court to disregard the answer of the jury to Special Issue No. 14 which found the failure of Mrs. Anderson to keep a proper lookout was a proximate cause of the collision, and also the answer of the jury to Special Issue No. 16 which found that the failure of Mrs. Anderson to drive her automobile to her right was a proximate cause of the collision, because each answer was wholly without support in the evidence; and asking that, after disregarding such answers, that the court render judgment for appellee. The court granted this motion; disregarded the answers to these two Issues; and rendered the judgment here appealed from in favor of appellee.

Here appellant assigns four Points of Error, but they really present only the questions of whether the court erred in holding the jury's answers to Special Issues 14 and 16 were wholly without support in the evidence.

Appellee, in case it should be held by this Court that there was evidence to support the jury findings to the above two Issues, assigns as Counter-Points that the above answers were so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust, and that the jury was guilty of misconduct, and, therefore, if the judgment is not affirmed it should not be reversed and rendered in favor of appel-

lant, but should be reversed and remanded for another trial.

We will first discuss whether the trial court was in error in holding there was no evidence to support the jury's answers to Special Issues Nos. 14 and 16.

■ In determining whether there was any evidence to support the jury's answers to certain Special Issues, we must consider only that evidence, and reasonable inferences to be drawn therefrom, that are favorable to the answers of the jury to those Issues, and must disregard that which militates against such answers. If there is evidence of probative value that will support any one of the findings of proximate cause, the trial court was in error in rendering judgment for appellee. Biggers v. Continental Bus System, Inc., Tex., 303 S.W.2d 359; Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497; Whiteman v. Harris, Tex.Civ.App., 123 S.W.2d 699, writ ref.; Warren v. Schawe, Tex.Civ. App., 163 S.W.2d 415, writ ref.; Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682.

We must review the testimony to determine whether there is any evidence of probative value to support either of the jury's conclusions that Mrs. Anderson's failure to keep a proper lookout and her failure to drive to her right were each a proximate cause of the collision.

Mr. Bardwell testified that he was proceeding north on 14th Street. As he came to Texas Avenue he stopped at a stop sign and remained about five minutes, to allow traffic on Texas Avenue to clear as the traffic was heavy. He intended to enter Texas Avenue, make a left turn, and proceed west on Texas Avenue. Just as he entered Texas Avenue he looked to his right and then to his left. To his right, proceeding in a westerly direction he saw Mr. Evans' automobile in the center lane about 50 yards east of the intersection. To his left he saw Mrs. Anderson's automobile about 75 yards, more or less, to the west of the intersection. It might here be noted

that Texas Avenue has six lanes, the north and south lanes being usually used for parking vehicles and two lanes on each side of the center line being used for vehicular traffic. He proceeded across Texas Avenue and in the meantime the Evans car had changed to the lane nearest the center. He did not see the Evans car from the time he first observed it until the collision. The front of his car hit the left rear fender of Mr. Evans' car. Mr. Evans lost control of his car; crossed over the center line of Texas Avenue and proceeded west in the lane occupied by Mrs. Anderson. Evans' car collided head-on with Mrs. Anderson's vehicle. The point of collision between the Evans and Anderson vehicles was 25 to 30 yards west of the west side of 14th Street. Evans' vehicle traveled 20 or 30 yards after it was hit by Bardwell's vehicle. There were no vehicles ahead of Mrs. Anderson. If there were any in back of her, they were a substantial distance back. The time between the two collisions was a split second. The second collision happened just in a flash after the first one. The Bardwell vehicle spun completely around and ended up just west of the west line of 14th Street with its front wheels against the south curb of Texas Avenue.

A Mr. Pierce testified he entered Texas Avenue at 12th Street behind the Evans car and proceeded west. Evans was in the center lane, but changed to the lane next to the center line. Pierce passed him and at the time of the first collision the front of Evans' vehicle was about even with the rear wheels of Pierce's vehicle. Evans was traveling from 22 to 25 miles per hour. At another point he said Evans was going about 20 miles per hour. Bardwell was proceeding very slowly. The point of collision with Bardwell was when Evans was nearly through the 14th Street intersection. The point of collision between the Evans and Anderson vehicles was about 45 feet west of the west line of 14th Street. There was a second or two between the two collisions. The collision between the Anderson and Evans vehicles was head-on in the lane

of travel of Mrs. Anderson. Bardwell's car spun around 180 degrees and ended up on the south side of Texas Avenue. Mrs. Anderson was going about 20 miles per hour at the time of the second collision. Traffic was pretty heavy. There was 3 or 4 cars ahead of him. Bardwell, from the time the witness first saw him picked up his speed from 2 or 3 miles per hour to 15 or 18 miles per hour.

Mr. Evans testified he was driving from 25 to 30 miles per hour as he approached the intersection. He had nearly cleared the intersection when Bardwell's automobile hit his. He was driving 20 to 25 miles per hour when Bardwell's car hit his. Between the time of the first collision and the second one was a few seconds, or a second, or it occurred just in a flash. He did not know how fast his car was moving when it collided with Mrs. Anderson's. When Bardwell's car came to rest on the south side of Texas Avenue, its front wheels were against the south curb. Evans, going the speed he was, could have stopped his car in 25 feet. He lost control of his car. His collision with Mrs. Anderson was 20 to 30 feet west of the west line of 14th Street. After the collision with Bardwell's car, he traveled about 40 feet before colliding with Mrs. Anderson.

Mrs. Anderson testified she was proceeding east on Texas Avenue at a speed of from 25 to 30 miles per hour. She was in the lane next to the center of the street. She saw Bardwell when he was in the middle lane. She did not see the collision between Bardwell and Evans. The time between the two collisions was two or three seconds—just a flash. Her car was still moving when it collided with Evans' car, but she doesn't know at what speed. There was heavy traffic. She did not know how far she was from the intersection when she saw Bardwell. She never saw Evans before the collision with Bardwell. She did not see Bardwell's car turn 180 degrees. She at no time turned her car to her right.

Viewing the evidence most favorably in support of the jury's finding and discarding contrary evidence and inferences, we find Mrs. Anderson, at the time Bardwell was commencing his move onto Texas Avenue, a distance of 225 feet or more back of the intersection because Bardwell, who gave the only testimony, testified she was 75 yards, more or less, back from the intersection. The south half of Texas Avenue is 30 feet wide.

When the Bardwell car commenced its movement into Texas Avenue, Mrs. Anderson was traveling at a speed of 25 miles per hour. She would be traveling 36.66 feet per second. She could have been farther back or less, because Bardwell said she was back 75 yards, more or less. The specific yardage stated is all that can be tied to. Bardwell started his movement so that when he was entering Texas Avenue he was going two to three miles per hour and speeded up to 15 or 18 miles per hour, the speed at which he was going when his car hit Evans' car. His average speed over the south half of Texas Avenue could have been, if we take the two miles per hour and 15 miles per hour figures, as the jury had a right to do, $8\frac{1}{2}$ miles per hour. At this speed, it would have taken him $3\frac{1}{2}$ seconds to reach the point of collision. In the meantime, if Mrs. Anderson continued at 25 miles per hour, she would have traveled 128.31 feet, leaving her 96.69 feet from the intersection. If she had been looking, she would have seen the collision. Assume the time for her to react is the average time of $\frac{3}{4}$ths of a second, she would have traveled $27\frac{1}{2}$ feet, so at the time she would commence taking action she would be 69.19 feet from the intersection. In the same period of time of $\frac{3}{4}$ths of a second, Evans' car would have proceeded, at 20 miles per hour, a distance of 22 feet, so that the two automobiles would be 47 feet apart. Mrs. Anderson, so the jury might have concluded, could have turned her automobile to the right into the middle lane. She would then have had 69.19 feet in which

to stop her vehicle before it reached the intersection, and 47 feet before reaching the point of collision. There is no evidence as to how many feet would be required in which to stop her car, but Evans testified that at 20 miles per hour he could stop his car in 25 feet. Evans testified the point of collision between the Evans and Anderson cars was 20 to 25 feet west of the intersection. The jury had a right to accept this testimony and conclude that even had Mrs. Anderson not driven to the right she would have had 47 feet before the point of collision in which to stop. Too, the jury could have concluded that Mrs. Anderson's car was almost stopped at the time of the collision. She said her car was still moving, but she did not know at what speed. Pierce did testify she was traveling 20 miles per hour, but the jury could have concluded this could not be in the light of the relatively light damage done to the two cars, as shown by the pictures in evidence. It is true that Bardwell's car spun around and ended up with its front wheels against the south curb. It is not shown how far west of the intersection, but the diagram in evidence shows it to be some feet nearer the intersection than Mrs. Anderson's car after the collision. The length of Bardwell's car is not shown, but it was certainly more than 10 feet long, so it would have occupied part of the middle lane and Mrs. Anderson could not have continued across the intersection. However, the jury could have concluded had she turned into the middle lane when the first collision occurred and had put on her brakes, that she could have stopped so as to have avoided the collision.

All of the foregoing is based on the assumption that the moment of the collision between the Bardwell car and the Evans car was the first moment of danger. However, the jury could have well concluded that the moment of danger was before the impact, in which case a longer period would have been available to Mrs. Anderson in which she could have taken steps to avoid being involved in a possible collision. The jury might have concluded that had she

been keeping a lookout she would have seen Bardwell crossing the intersection, and increasing his speed to 15 miles per hour. She would have seen Evans proceeding at 25 miles per hour, and changing from the middle lane to the lane nearest the center of the street. She, as a reasonable person, should have known that there would probably be a collision if Bardwell didn't stop. If he did stop, he would be in her lane of travel, and she would either have to stop or turn to the right to go around him. The jury could have concluded that when the cars were 11 feet apart there was danger. This 11 feet is arrived at by taking Bardwell's speed of 15 miles per hour. He would be traveling 22 feet per second. When he was 11 feet from the point of impact, it should have been evident that Bardwell must either stop, which would have been difficult, in which case he would be in her lane of traffic, or he would collide with the Evans car. If Mrs. Anderson had at that time begun to stop, she would have had an additional 18.33 feet in which to stop and in which to turn her car into the center lane, or, a total distance of 67.33 feet.

■ We have, therefore, concluded there was evidence of probative value to support the jury's findings that the failure to keep a proper lookout and failure to turn her car to the right were proximate causes of the collision, and the trial court was in error in disregarding the jury's answers to these issues and rendering judgment for the appellee.

■ The question now arises as to whether the jury's answers to these issues are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. In determining this matter, we must consider the whole of the record, both that which is favorable to the verdict and that which militates against it. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Dyer v. Sterett, Tex.Civ.App., 248 S.W.2d 234; Continental Bus System, Inc. v. Biggers, Tex.Civ.App., 322 S.W.2d 1. We may not

substitute our judgment for that of the jury merely because we might, on the evidence, have reached a different conclusion. We may not set aside the jury findings unless we are impressed from a consideration of all the testimony that such findings are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong, manifestly unjust, or shocking to the conscience. Continental Bus System, Inc. v. Biggers, supra.

We have stated all of the material evidence on the issues. We have studied the whole record very carefully, and we are unable to say that the jury's findings of proximate cause are so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust or clearly wrong. We are rather impressed with the conclusion that the preponderance of the evidence supports the jury's conclusions. We feel that the analysis made above and the conclusion reached is the most valid explanation of the causes of the collision as reflected by the whole of the evidence.

Appellee by further cross-point contends the jury was guilty of misconduct. The misconduct alleged was an agreement among the members of the jury to be bound by a majority vote.

There are no findings of fact by the trial court. If there is evidence of probative value in the record to support the action of the trial court in overruling the motion for new trial, we cannot disturb that action.

■ We need not review the testimony. It suffices to say there was evidence to show an agreement was made, before the issues were answered, to be bound by a majority vote and that this agreement was carried out. Had this been all of the testimony, there would have been jury misconduct. Tian v. Warren, Tex.Civ.App., 271 S.W.2d 453, writ ref., n. r. e. However, this was not all of the testimony. There was testimony from several jurors that there was no such agreement. There was testimony that after some of the issues were discussed

and no agreement was reached, the jury took a preliminary vote and then passed on to other issues. After other issues were answered, they came back to the issues previously answered, but not agreed upon, and such issues were discussed until such time as there was unanimity on each issue. While the jurors who testified there was an agreement to be bound by the majority testified they agreed to the issues, they say they did so only because they thought they were bound by the majority rule. The result of the testimony is that there was a conflict. There was evidence to show an advance agreement to be bound by a majority vote and a carrying out of that agreement. There is, to the contrary, testimony that no such agreement was made, but there was a preliminary vote to obtain the feeling of the jury on certain issues, and subsequently the issues were further discussed and were unanimously agreed upon. Too, the jurors were asked when the verdict was returned into court if it was their verdict and they answered it was.

■ The evidence must be viewed most favorably to the order of the court overruling the motion for new trial. State Teachers' Mutual Life Ins. Co. v. Mims, Tex.Civ.App., 74 S.W.2d 549, writ ref. The court here could have ruled either way. He presumably found misconduct did not occur. He, as the trier of the facts, is allowed great latitude in passing on the credibility of the witness and in weighing the testimony. St. Louis, B. & M. R. Co. v. Cole, Tex.Com.App., 14 S.W.2d 1024.

■■ There being evidence that at the most a preliminary vote was taken and that later, after further discussion of certain issues, the minority came over to the majority, there being no advance agreement that the majority vote would control, there was no misconduct. Boddeker v. Olschewske, Tex.Com.App., 127 Tex. 598, 94 S.W.2d 730. It is no answer for the jurors to say they felt bound by an alleged agreement to follow the majority. This is but inquiring into the mental processes of

the jurors, and this is not permissible. Western Cotton Oil Co. v. Mayes, Tex.Civ. App., 245 S.W.2d 280, no writ history.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing.

### On Motion for Rehearing

Appellee Anderson has filed a motion for rehearing, asserting we erred in holding there was evidence to support the jury's findings that Mrs. Anderson's failure to keep a proper lookout and her failure to turn her automobile to the right were each a proximate cause of the collision, and the Trial Court therefore erred in disregarding such findings and in rendering judgment for Anderson.

We adhere to the holding that there was evidence of probative value supporting the jury's findings and that the Trial Court erred in disregarding such findings.

Complaint is further made that we reversed and rendered judgment, it being contended by appellee that we should have at the most only reversed the case with directions to the Trial Court to enter judgment for Bardwell on the verdict, and that Anderson should then be allowed to file a motion for new trial setting up jury misconduct and that the findings of the jury that Mrs. Anderson's failure to keep a proper lookout and her failure to turn her automobile to the right were each a proximate cause of the collision are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

We have reviewed the record and find that after the jury returned its verdict, appellee Anderson made a "motion for mistrial" based on jury misconduct as discussed in our original opinion, and, in the alternative, that the Court disregard the jury's findings that Mrs. Anderson's negligence was a proximate cause of the collision because there was no evidence to support such findings. The Trial Court gave a full hearing on the issue of jury misconduct and, after hearing the testimony of the jurors, overruled the motion for mistrial asserting jury misconduct. On the same day the Court entered a judgment for Anderson after finding there was no evidence to support the jury's findings that Mrs. Anderson's negligence was a proximate cause of the collision.

On appeal to this Court, appellee, while arguing in support of the judgment rendered in his favor, asserted Cross-Points of Error. One Cross-Point asserted error on the part of the Trial Court in overruling its assertion of jury misconduct and the other asserted he was entitled to a new trial because the jury's findings that Mrs. Anderson's negligence was a proximate cause of the collision were against the overwhelming weight and preponderance of the evidence. The briefs for both appellee and appellant were confined to a discussion of the merits of these Cross-Points. We discussed the Cross-Points on the merits and overruled them.

In the motion for rehearing, for the first time, it is urged that under Rule 324, Texas Rules of Civil Procedure, as it existed at the time this case was tried in the Trial Court, and as it existed when the transcript and statement of facts were filed in this Court, we should not ourselves pass on the merits of the Cross-Points, but should send the case back to the Trial Court so that Anderson could file his motion for new trial setting up the subject-matter of his Cross-Points, and allow the Trial Court to pass upon the matter.

Under the holding of the Supreme Court in the case of De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95, Rule 324, T.R.C.P., as it existed at the time this case was tried and at the time the transcript and statement of facts were filed in this Court, an appellee in favor of whom a judgment had been rendered was authorized to complain by Cross-Points of Error of proceedings in the Trial Court that would entitle him to a new trial if motion for new trial were filed in the Trial Court. It was held that

in case of such Cross-Points, should the appellate court determine that the Trial Court had erred in disregarding the jury's verdict, or some of its answers, and had entered erroneously a judgment non obstante veredicto, or erroneously entered a judgment for appellee after disregarding some jury answers, the case should be reversed with directions to enter judgment on the verdict, with the right of the appellee to file a motion for new trial setting up jury misconduct and that the answers of the jury were against the overwhelming weight and preponderance of the evidence. The reasoning of the Court was that an appellee, where a judgment has been rendered in his favor, has had no occasion or opportunity to raise in the Trial Court the question of "any prejudicial error committed against him over his objection" on the trial with respect to such matters. The Supreme Court then held that a remand to the Trial Court for a consideration by that Court of any matter upon which the Trial Court had not passed was in harmony with our concept of the role of the trial judge and the theory of appellate review.

Rule 324, as it was amended, became effective September 1, 1957. Under the rule as it now exists where an appeal is taken from a judgment of a trial court, which trial court judgment was rendered non obstante veredicto, or, in favor of the appellee after the trial court had, on proper motion, disregarded certain answers of the jury, and the appellee wishes to assert a ground that would vitiate the verdict or prevent affirmance of the judgment of the trial court had it been a judgment entered in harmony with the verdict, in the event the appellate court should hold the trial court erroneously entered judgment non obstante veredicto, or, after disregarding certain of the jury's answers, he must set up his complaint by a cross-point. If he fails to do so, his complaint is waived, except where his complaint is of jury misconduct or some other matter requiring the taking of testimony. The evident purpose of the rule is to avoid the holding in

De Winne v. Allen, supra, so as to allow an appellate court to decide in one appeal all alleged errors that could affect the judgment that show of record in the appellate court.

Under this rule, where the appellate court determines the trial court, as we have here held, erroneously disregarded certain jury answers and then entered judgment contrary to the verdict as it included such answers, or rendered judgment non obstante veredicto, and appellee has cross-points, as in this appeal, asserting that the answers of the jury to the issues disregarded are against the overwhelming weight and preponderance of the evidence, the case will not be remanded to the trial court for that court to resolve the matter, but the Court of Civil Appeals will determine the issue on a basis of the record before it. Of course, in the case of a complaint about a matter such as jury misconduct which requires the taking of testimony, the court will, except in an exceptional situation such as we have here, remand to the trial court for the taking of testimony and so the trial court can first pass on the matter.

In his motion for rehearing, as well as in his brief on original submission, appellee rather assumes this is the effect of Rule 324, as amended, but on motion for rehearing he contends the rule as it existed before its amendment is applicable in this case because the case was tried before the effective date of the amendment and the transcript and statement of facts were filed in this Court before the effective date of the amendment.

The transcript was filed in this Court August 2, 1957. The statement of facts was filed here August 9, 1957. Appellant, under Rule 414, T.R.C.P., would, in the absence of an extension of time, have been required to file his brief within thirty days, or on or before September 8, 1957. The appellee would have, under said rule, been required to file his brief containing his reply and any cross-points he desired to assert within

twenty-five days thereafter, or on or before October 3. Actually, on an agreed motion, appellant obtained an extension of time to file his brief, and did so February 12, 1958, and appellee filed his brief March 10, 1958. The result is that the amendment to Rule 324 was effective prior to the time appellee would have been required to file his brief containing his Cross-Points.

 There is nothing in the rule, or the order promulgating it, stating whether it shall be applicable to pending litigation or only to future cases. The general rule is that in the absence of an express intention to the contrary, legislation dealing with a procedural matter applies to pending litigation to the extent that subsequent steps in the case are to be taken under the new rule. Past steps taken under a rule or statute will not be affected, but subsequent steps will be governed by the new rule provided a reasonable time is afforded in which to take them. A remedy must not be denied by entirely eliminating it or be so unduly limited as to amount to a denial of it, such as by changing the time within which it may be resorted to so that it cannot as a practical matter be asserted. Walker v. Lyles, Tex. Civ.App., 45 S.W.2d 315, affirmed Tex.Com. App., 124 Tex. 38, 72 S.W.2d 1113; Phil H. Pierce Co. v. Watkins, 114 Tex. 153, 263 S.W. 905; Hunter v. Moore, Tex.Com.App., 122 Tex. 583, 62 S.W.2d 97; Red v. Bounds, Tex.Com.App., 122 Tex. 614, 63 S.W.2d 544.

 Rule 324 provides for cross-points to be assigned in the brief of appellee and the amendment was effective over thirty days before appellee was required to file his brief, if appellant took the time allowed in which to file his brief, which appellant did. Appellee has been cut off from no remedy by the amendment. The rule merely changes the forum in which the complaint is passed on from the trial court to the appellate court, except as to matters such as jury misconduct. We hold, therefore, that appellee's Cross-Points asserting that the jury's answers finding Mrs. Anderson's negligence to be against the overwhelming weight and preponderance of the evidence were properly disposed of by us under Rule 324, as amended, and there should not be a remand to allow the Trial Court to pass on such issue.

 Under Rule 324, where by Cross-Point an appellee asserts jury misconduct and asks for a remand of the case so that evidence may be heard, it would be necessary to remand the case if no evidence had been heard. However, in this case appellee filed his motion for mistrial in the Trial Court asserting jury misconduct. He was accorded a full hearing by the Court and after the Court had heard all jurors testify, the motion was overruled. The testimony was brought up as a part of the record. The parties both briefed the issue on the merits. Appellee is not entitled to a second ruling by the Trial Court.

Appellee has cited us the following cases, which he contends support his position that we should apply Rule 324 prior to its amendment: Le Master v. Ft. Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227, writ ref., w. m.; Insurors Indemnity & Ins. Co. v. Associated Indemnity Corp., 139 Tex. 286, 162 S.W.2d 666, and Thomas v. Kansas City Southern Ry. Co., Tex.Civ.App., 305 S.W.2d 642, writ ref., n. r. e.

In the Le Master case the Supreme Court followed the procedure employed under Article 2211, V.A.T.S., which was in existence when the case was tried, and remanded the case to the trial court to allow a motion for new trial and refused to apply Rule 324, which became effective September 1, 1941, though Rule 324 had become effective prior to February 18, 1942, the date the Supreme Court handed down its decision. Under the rule, as construed by that Court, it was necessary for an appellee to include cross-points in his brief to have them considered by the appellate court, whereas it was not necessary under the practice before Rule 324. We gather from the opinion that appellee had not asserted any cross-points. The Court said the case was tried and ap-

pealed before Rule 324 became effective. We observe that the Court of Civil Appeals rendered its decision April 12, 1940, and overruled a motion for rehearing September 6, 1940. The new rule became effective, as above stated, September 1, 1941. When the Supreme Court said the case was appealed before the effective date of the rule, it meant that steps had already been taken and the appeal in the Court of Civil Appeals had been disposed of under the old statute before Rule 324 had become effective. Had the new rule been applied, it would have been applied retroactively so as to deprive the appellee of any remedy to obtain a review of his complaint that the jury's answers were against the overwhelming weight and preponderance of the evidence. What the Court really held was that it would not apply a new rule to procedural steps taken prior to the effective date of the new rule where to do so would effectively deprive the party of any remedy for correcting an error. The effect is not to say that the new rule will not apply to steps to be taken after it became effective, if sufficient opportunity is allowed by the new rule to take the steps.

We, in our holding that Rule 324, as amended, applies here, do not give any retroactive effect to the rule, as amended, and we do not curtail or cut off any remedy. We give prospective effect to the amended rule which effectively, under the facts of this case, gives appellee a forum, though a different one, in which to obtain an appraisal of his assertion that the disregarded answers of the jury are against the overwhelming weight and preponderance of the evidence.

In the case of Happ v. Happ, supra, the Court of Civil Appeals actually applied the new rule which was effective after the case was tried, but before the appeal was disposed of. The Court, in its opinion, we think, gave the same construction to the Le Master case which we give it, that is, the rule will not be applied to steps taken before its effective date that would work an obvious prejudice to a party. We feel the case actually supports our holding, because it appears that appellee had actually included in his brief a Cross-Point that certain answers of the jury were against the overwhelming weight and preponderance of the evidence. Before Rule 324, it was unnecessary to assert cross-points and if the trial court erred in its judgment rendered out of harmony with the verdict, the case would be reversed and remanded to allow appellee to file a motion for new trial. Rule 324 as originally promulgated, the court interpreted to mean that if there were cross-points filed by appellee, the appellate court would pass on these points on the merits. In the Happ case the Court of Civil Appeals did not apply the old rule and send the case back to the trial court so a motion for new trial could be filed, but passed on the cross-point on its merits and reversed and remanded the case for retrial on the merits. Thus, the Court applied Rule 324 instead of the practice under Article 2211 as to steps taken after the rule became effective.

In Insurors Indemnity & Ins. Co. v. Associated Indemnity Corp., supra, the Court applied the procedure under Article 2211, though when the Supreme Court decided the case in April of 1942 Rule 324 was in effect. However, the case was decided by the Court of Civil Appeals before the effective date of Rule 324. Old Rule 71a, requiring a motion for new trial as a prerequisite to an appeal except in certain instances, was applied instead of Rule 324. However, at the time for filing a motion for new trial and at the time the case was disposed of in the Court of Civil Appeals, Rule 324 had not become effective.

The case of Thomas v. Kansas City Southern Ry. Co., supra, which applied Rule 324 before the amendment of September 1, 1957, was decided by the Court of Civil Appeals September 19, 1957. The probability is that it was briefed and submitted prior to the effective date of Rule 324, as amended. In any event, no issue over which rule would apply was raised in the case.

■ On the merits of appellee's Cross-Point that the jury's answers finding Mrs.

Anderson's negligence to be a proximate cause of the injury, we have again reviewed the testimony. The whole record has been considered. Though a court, had its members been jurors, might have reached a different conclusion from the jury, it may not substitute its judgment for that of the jury. The test is whether, based on the whole record, we can say that the answers are so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust or clearly wrong. We are unable to reach such a conclusion. Continental Bus System, Inc. v. Biggers, Tex. Civ.App., 322 S.W.2d 1, writ ref., n. r. e.

Appellee's motion for rehearing is overruled.

### On Appellee's Second Motion for Rehearing

Appellee has filed his second motion for rehearing, reasserting his position that we should have reversed and remanded this cause so as to allow him to file his motion for new trial asserting the jury's answers which found two of Mrs. Anderson's acts of negligence to be proximate causes of the collision were against the overwhelming weight and preponderance of the evidence. He insists that he has the right to have the trial court pass on this and that we should only exercise appellate review on the matter since the case was tried before Rule 324, T.R.C.P., as amended became effective.

We have completely re-examined the question but are unable to reach the conclusion contended for by appellee.

Appellee correctly points out an inaccuracy in our opinion on motion for rehearing. We there stated it was on motion for rehearing that for the first time appellee contended we should reverse and remand the case to allow the trial court to pass on the matter. The brief of appellee did not ask that the case be reversed and remanded to allow the trial court to pass on this matter. However, in a letter brief to the Court, filed after submission of the cause, in response to a question asked on submission by the author of this opinion, appellee cited De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95, and other cases, and asserted we had the power to reverse and remand the case so the trial court could pass on the matter. We, however, deem this not determinative of the issue.

We have re-examined the cross-points on their merits and remain of the view that the jury's answers were not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong.

Appellee's motion for rehearing is overruled.