Barbara **MORRIS**, Appellant,

v.

Wilford V. **MORRIS**, Jr., Appellee.

No. B14–87–434–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 25, 1988.
Rehearing Denied Sept. 22, 1988.

John K. Grubb, Houston, for appellant.
Sidney Levine, Sealy, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

OPINION

DRAUGHN, Justice.

Barbara Morris [appellant] appeals from the trial court's order dividing the community estate of Wilford V. Morris [appellee] and her, and the court's order awarding child support. We affirm in part, and reverse and remand in part.

■ Appellant contends the trial court erred by not awarding child support in accordance with Supreme Court of Texas,

Child Support Guidelines (February 4, 1988). The general rule is that, in the absence of an express intention to the contrary, rules or legislation dealing with a procedural matter apply to pending litigation to the extent that subsequent steps in the case are to be taken under the new rule. Past steps, taken under a rule or statute, will not be affected, but subsequent steps will be governed by the new rule, provided a reasonable time is afforded in which to take them. *Bardwell v. Anderson*, 325 S.W.2d 929, 939 (Tex.Civ. App.—Houston 1959, writ ref'd n.r.e.); *see also Ex Parte Abell*, 613 S.W.2d 255, 260 (Tex.1981).

■ The child support guidelines had been in effect for nearly two months at the time of judgment. Appellant properly requested the trial to determine child support payments in accordance with the guidelines. Appellant requested in writing, within ten days of the signing of the support order, that the trial court make findings pursuant to Rule 7 of the guidelines. The trial court made no such findings.

The language of the Rule 7 is mandatory:

"[o]n written request made no later than 10 days after the signing of the child support order, the court *shall* state the following:

The court finds that:

(1) the amount of net resources available to the obligor per month is ___;

(2) the amount of net resources available to the obligee per month is ___;

(3) the percentage applied under Rule 5 of these child support guidelines is ___% to ___%;

(4) the amount of support per month computed by applying Rule 5 of these guidelines is $___ to $___; and if applicable;

(5) the reason(s) that the amount of support per month ordered by the court varies from the amount computed by the percentage guidelines pursuant to Rule 5 is/are _____."

Appellee argues that the court could not make the findings or apply the guidelines, since it was not presented adequate information. However, Rule 3(f) provides that "the court *shall* require the parties to furnish sufficient information to enable it to accurately identify the parties net resources and their abilities to provide child support."

Accordingly, we find the trial court erred by failing, upon the proper request of appellant, to make findings as required by the guidelines. Point of error number one is sustained.

In her second point of error, appellant contends the trial court abused its discretion in the division of the community assets. We agree.

The parties were married for twenty-four years. During the early years of the marriage appellee earned degrees in pharmacy and osteopathic medicine, while appellant worked as a keypunch operator and cared for their first child. Appellant has only a high school education, and has worked only intermittently in appellee's office since the birth of their second child fourteen years ago.

Appellee, during the life of the marriage, has developed a very lucrative medical practice. However, the record reflects that many of the assets generated from the business have flown into various partnerships and corporations which appellee has created. Appellee kept complete control of the family finances. He gave appellant only $100.00 for groceries and $10.00 spending money per week. When appellant needed gas for the car, she would call appellee who would come from the clinic, take the car to fill it with gas, and then return to the clinic.

The 1984 and 1985 tax returns for appellee's professional association, his clinic, show his average monthly income is $6,188. Appellee's clinic is housed in a building owned by a partnership between himself and his father. We note that appellee and his father inserted a clause into the partnership agreement providing that, in the event of divorce, the partners spouse was to receive no interest in the partnership. Appellee was awarded all interest in the

professional association and the partnership. Considering only these items he is left with a minimum monthly income of over $7,000. Appellee was awarded numerous pieces of real estate, some of it income producing. While appellee was made responsible for the large indebtedness attached to some of the real property awarded to him, the record indicates that those pieces of property have always been carried on the books of the professional association, and payments on the indebtedness have been made by the association. Appellee also received full interest in a house and all its furnishings. The house is occupied by Nedda Hess, an employee of appellee, with whom he acknowledges he has been romantically involved for a number of years.

■ Appellant, who was awarded custody of the one minor child, is unemployed. She has had little work experience outside of the home during the last fourteen years, and possesses few marketable skills. She was awarded the homestead, its furnishings, a car and the clothing, jewelry, and personal effects in her possession. Appellant was also awarded her IRA and the insurance policies covering her life. She was awarded a fourteen acre tract of rural real estate, with its accompanying five-thousand dollar indebtedness. The sixty percent of the professional association's profit sharing and pension plan awarded to appellant do not provide her with a ready source of liquid assets. The only liquid assets awarded to appellant were $10,000 in cash. Since she has no source of income, one-half of that will have to be expended to retire the $5,000 debt on the rural real estate awarded to her.

The most valuable asset available for distribution was appellee's professional association, his clinic. Appellee established his practice and built it into a lucrative business during the marriage. We are unpersuaded by appellee's argument that these assets could not be divided, because to do so would result in tax problems. Even accepting appellee's assertion, we see no reason appellee should not have been

required to buy-out appellant's interest in this valuable community asset.

Under this division of property, appellant is left with a home to maintain and the responsibility of caring for a minor child, but with no means of fulfilling the financial part of those obligations. During the twenty-four years of the marriage, appellant supported appellee in earning his degrees and developing his practice; she raised his children and cared for his home. Given the benefits appellee accrued during the life of the marriage and the marked disparity in earning potential between appellant and appellee, we cannot hold the property division was "just and right" in accordance with Tex.Family Code Ann. § 3.63 (Vernon Supp.1988). *Haggard v. Haggard*, 550 S.W.2d 374, 378 (Tex.Civ. App.—Dallas 1977, no writ); *McKnight v. McKnight*, 535 S.W.2d 658, 661 (Tex.Civ. App.—El Paso 1976), *rev'd on other grounds* 543 S.W.2d 863 (Tex.1976). Appellant's second point of error is sustained.

Because of our disposition of points of error one and two, it is unnecessary to address appellant's third point of error.

The portions of the judgment of the trial court awarding child support and dividing the community estate are reversed and remanded for action consistent with the opinion of this court; the judgment is in all other things affirmed.