Allen Murray Myers, J.
At the end of the opening statements in this action for malpractice and assault, defendant moved to dismiss the plaintiff’s causes of action on the ground that they are barred by article 8 of the Civil Rights Law, formerly article 2-A of the Civil Practice Act (see, also, Fernandez v Lazar, NYU, Sept. 15, 1971, p 19, col 6 [Sp Ct, NY County, Leff, J.]). I denied this motion and now render this formal opinion.
*351 On a motion such as this the facts as proposed to be proved must be viewed in the aspect most favorable to the plaintiff and every permissible inference from those proposed facts in favor of plaintiff must be indulged (Kraus v Birnbaum, 200 NY 130). At this stage, I must therefore assume the truth of all the allegations of the complaint and in the plaintiff’s opening statement.
Plaintiff alleges that she consulted the defendant psychiatrist because of her sexual problems. During the course of her treatment and in furtherance thereof he suggested that they have sexual relations as part of her treatment. The parties then had sexual relations over a period of about 13 months during which the defendant treated plaintiff. Plaintiff claims that as a result of the defendant’s actions her mental illness was aggravated to the extent that she had to be confined twice to a mental institution and suffered other damages.
The question of law presented here is whether this action is barred by the Heart Balm Act (Civil Rights Law, art 8, formerly Civ Prac Act, art 2-A).
Abolished by the Heart Balm Act were actions for alienation of affection, criminal conversation, seduction and breach of contract to marry. The unequivocal purpose of the legislation was to outlaw those actions based on broken promises of marriage or interference with the marital relationship (Locke v Pembroke, 280 NY 430; Sulkowski v Szewczyk, 255 App Div 103; Sweinhart v Bamberger, 166 Misc 256; 15 NY Jur, Domestic Relations, § 330).
There was no action for seduction by the seduced against her seducer known to the common law. Where such an action arose in this State, it was grounded upon a breach of a promise to marry and was abolished by the Heart Balm Act (cf. Locke v Pembroke, supra; Fearon v Treanor, 272 NY 268). Indeed, the Court of Appeals, in Locke v Pembroke (supra, p 433) indicates that other promises would not be enforceable in such an action: "defendant, upon the representation that he was free to marry [her], and under a promise to marry her, seduced this plaintiff, and * * * thereafter * * * he told her he was married * * * and promised to make a reasonable allowance for her maintenance * * * and in August of 1927 promised to pay her $500 per month for her maintenance and support. Up to this point there was no valid agreement. The promises of the defendant were unenforceable. The consideration for them was illegal or rather there was no consideration *352 RECOGNIZED BY THE COMMON LAW OR BY THE LAW of this State”. (Emphasis added.)
It was never the intention of the Legislature to outlaw all actions in which sexual intercourse is an element. As a matter of fact, where consent could not be given or where it was coerced as in cases of statutory rape, rape or where there was a fiduciary relationship between guardian and ward, there was always an action for damages on the case. (See Disler v McCauley, 66 App Div 42.) The Heart Balm Act was never intended to outlaw these nonconsensual causes of action.
This case involves a fiduciary relationship between psychiatrist and patient and is analogous to the guardian-ward relationship in Graham v Wallace (50 App Div 101, 108) wherein the court stated: "The ward cannot waive performance of this duty or surrender these rights of protection. When the guardian thus betrays his trust and ruins the morals, the character and reputation of his ward, he should not be heard to say in a court of justice, by way of legal excuse or justification for the seduction, that the ward was capable of consenting. Consent obtained under such circumstances is no consent and should stand for naught. It is essential to the preservation and enforcement of the ward’s right of protection in her chastity and virtue that a violation of this right by her guardian should not pass with impunity, but that it should be vindicated and the seducer punished on the civil as well as on the criminal side of the court”.
In Tuck v Tuck (14 NY2d 341) the plaintiff had been hoodwinked by the defendant into a sham marriage. She thereafter brought suit against the defendant for deceit. As is the case here, defendant raised the defense that the plaintiff’s claim was in actuality one for seduction and hence barred by the Heart Balm Act. The Court of Appeals rejected that defense stating (pp 345-346):
"Nor may the defendant hide behind the statute which abolished rights of action for 'alienation of affections, criminal conversation, seduction, or breach of contract to marry’ (former Civ Prac Act, § 61-b, now Civil Rights Law, § 80). This legislation was not designed to, and did not, outlaw a cause of action for inducing a woman to enter into a void marital relationship by means of a sham and pretended ceremony. While a promise of marriage may underlie both this type of action and those encompassed by the statute, the wrong complained of by the plaintiff in this case is not that the *353 defendant seduced her or that he broke his promise to marry her but that he induced her to live with him as his wife by falsely representing that the ceremony, which he had arranged, was legitimate and that they were duly and properly married.
"The woman who permits hqrself to be seduced by a promise of marriáge knows full well that she is entering into an immoral and meretricious relationship. Completely lacking in such a case — grounded solely upon a breach of promise — is the change of status or, more precisely, the good faith supposed change of status on the part of the woman deceived. In the present case, at least according to the allegations of the complaint which we must at this stage accept as true, the plaintiff believed, in good faith, that the ceremony, performed by one apparently an official and in the presence of witnesses, was what it seemed to be, that she was being legally married to the defendant and that their subsequent cohabitation was truly as husband and wife.
"In short, if the allegations of the complaint are true, there was here not merely a promise of marriage, but a fraudulent representation that the ceremony was bona fide and that the plaintiff and the defendant had thereby been joined in wedlock. This being so, as Appellate Division Justice McNally noted in the course of his dissenting opinion, the present action 'is not a subterfuge to circumvent the statutory prohibition against actions for breach of promise to marry. A statute designed to prevent fraud should not unnecessarily be extended by construction to assist in the perpetration of a fraud. * * * It is not the public policy to enable the utilization and exploitation of the marriage ceremony for a fraudulent purpose be it in the form of a bigamous or sham marriage.’ ”
Plaintiff has not brought an action based on a claim of an unkept promise of marriage, nor is this action a subterfuge to circumvent the Heart Balm Act. The gravamen of her action lies in the malpractice, deceit and assault. In essence it alleges coercion by a person in a position of overpowering influence and trust. In this case where the plaintiff consulted the defendant for sexual problems, the treatment prescribed was not palpably unreasonable on its face. A jury might find that a plaintiff, in her mental state, could reasonably have submitted to the "treatment” in the hope that her condition would thereby improve.
It is noted with regard to the defendant’s claim that public *354 policy bars this suit, that there is a public policy to protect a patient from the deliberate and malicious abuse of power and breach of trust by a psychiatrist when that patient entrusts to him her body and mind in the hope that he will use his best efforts to effect a cure. That right is best protected by permitting the victim to pursue civil remedies, not only to vindicate a wrong against her but to vindicate the public interest as well (cf. I.H.P. Corp. v 210 Cent. Park South Corp., 12 NY2d 329; Walker v Sheldon, 10 NY2d 401).
The holding in Fernandez v Lazar (NYU, Sept. 13, 1971, p 19, col 6, supra) is not applicable and should be limited to its facts. To the extent that this decision appears to differ with mine I am constrained not to follow it.
With reference to the actions grounded on forcible sexual intercourse as an assault, the allegations of the complaint which allege violations of sections 130.35 of the Penal Law (4th cause of action); section 130.60 (5th cause of action); section 130.65 (6th cause of action) are sufficient (see Colly v Thomas, 99 Misc 158). The Colly case held (p 160): "that the violation of the Penal Law of the state gave the plaintiff a cause of action against the defendant.”
The third cause of action alleging violation of section 120.05 of the Penal Law was dismissed at the end of the plaintiff’s case for failure of proof.