**Ex parte John M. ABELL.**

**No. B–9939.**

Supreme Court of Texas.

March 18, 1981.

Brown, Maroney, Rose, Baker & Barber, Wayne Prescott and Walter H. Mizell, Austin, for relator.

Kidd, Whitehurst & Harkness, William O. Whitehurst, Jr., Polly Durham, Suzanne Wood Brown, Austin, for respondent.

1. Abell holds a Doctor of Education degree.

BARROW, Justice.

Relator, John M. Abell, seeks his release from the custody of the sheriff of Travis County by writ of habeas corpus. Abell has been remanded to the sheriff's custody by the judge of the 126th District Court of Travis County until he has responded to an interrogatory posed to him by plaintiffs in a pending suit in which Abell is defendant. After Abell had been ordered to answer, he continued to refuse and was held in contempt and ordered to purge himself of contempt by answering the interrogatory. We granted Abell's application for writ of habeas corpus and set down the case for hearing. After hearing argument and consideration of the applicable authorities, we order the relator, Abell, discharged.

A discussion of the background facts is necessary. In August of 1978, two women sued Abell in separate suits alleging essentially the same complaint. They both allege that they were former patients of Dr. Abell,[1] who was a psychologist duly licensed to practice under the laws of the State of Texas. Each alleges that during the course of their psychotherapy treatment, Dr. Abell gained their complete cooperation, and when they were psychologically powerless to resist, Abell had sexual intercourse with them. Each suit separately alleges several causes of action, including malpractice, assault and battery, fraud and deceit, and intentional infliction of emotional distress. Both claim actual and punitive damages. Abell has admitted sexual relations with the plaintiffs at his office but denies that the sexual intercourse was a part of his professional treatment. Although Abell admits charging for the therapy sessions in question, he denies charging for the particular time span during which the sexual intercourse occurred.

Abell refused to answer the following interrogatory in each plaintiff's suit:

50. Please state whether you have kissed, touched, hugged, fondled or had any sexual contact of any type, including sexual intercourse, with any other current or former patient you have under-

taken to treat? _____ If so, please state:

    a) The full name of each such patient;

    b) The date of each sexual contact;

    c) A complete description of each act of sexual contact; and

    d) Whether each act of sexual contact occurred in your office or at some other location. If at some other location, give the full street address of said loca-. tion.

The trial court initially ordered on October 30, 1978, after a hearing, that Abell answer the question in both suits by November 3, 1978. The court's order further provided for certain protections:

It is further ordered, adjudged and decreed that the answers to plaintiff's interrogatory number 50 shall be provided to the court in a sealed envelope not to be opened except by further court order. Defendant's answer to interrogatory number 50 will be restricted to patients of Dr. Abell subsequent to October 28, 1972. In answering interrogatory number 50, each name, if any, will further be identified by a number or letter for possible future use. Copies of all names, corresponding numbers or letters, and all other information contained in the sealed envelope shall also be provided to plaintiff's counsel. Attorneys, as officers of the court, are ordered not to divulge these names to anyone not a party or attorney in this cause of action and to use the utmost care and discretion in contacting or approaching said individuals.[2]

On advice of counsel, Abell refused to answer, and on November 16, 1978, pursuant to a show cause hearing, the trial court rendered its judgment of contempt and order of commitment. Abell then applied to this Court for a writ of habeas corpus which was denied on January 1, 1979. He next applied for a writ of habeas corpus to the federal district court, which also denied relief. Abell appealed that decision to the U. S. Court of Appeals for the Fifth Circuit.

While that appeal was pending, the Texas Legislature enacted Article 5561h, Tex.Rev. Civ.Stat.Ann., which provides for the confidentiality of mental health information of individuals. The act became effective on August 27, 1979.

On September 11, 1980, the Fifth Circuit court handed down its decision declining to decide the issue of Abell's claim of a constitutional right of privacy until the Texas courts have resolved the issues of state law, particularly the applicability of the new state statute, Article 5561h. *See Abell v. Frank*, 625 F.2d 653 (5th Cir. 1980).

Abell then moved the Travis County District Court to reconsider its prior orders in light of the new statute. The trial court denied the motion and again committed Abell to the custody of the sheriff on December 1, 1980. Application for writ of habeas corpus was again requested of this Court. This writ was granted, the case set for hearing, and Abell released on bond pending our decision.

The threshold question involves the contention of plaintiffs that Abell's collateral attack on the trial court's order is impermissible under *Ex Parte Lipscomb*, 111 Tex. 490, 239 S.W. 1101 (1922). There Lipscomb was held in contempt for refusing to answer questions from the witness stand during trial on the grounds that the answers would violate the attorney-client privilege. This Court held that the existence of the privilege and the waiver of it were questions for the trial court to determine, not the witness, and habeas corpus cannot be used as a method of appealing those rulings or to correct errors in the admission or exclusion of evidence. The distinguishing facet of *Lipscomb* is that the question arose during trial. In the instant case, however, the problem arose during pre-trial discovery and is thus governed by the rule in *Ex Parte Hanlon*, 406 S.W.2d 204 (Tex.1966). We there held that a judgment of contempt was void because it was predicated on a pre-trial order that violated the permissible

---

**2.** The order in the other suit was identical except that the date of October 28, 1972 was changed to August 25, 1974.

limits of discovery allowed by the Texas Rules of Civil Procedure. The same result was reached in *Ex Parte Shepperd*, 513 S.W.2d 813 (Tex.1974), in which one of the relators was ordered discharged because the order of discovery was "unauthorized."

▪ Relator Abell has no effective remedy here by appeal from the trial court's order. If he cannot collaterally attack the validity of the trial court's judgment of contempt by writ of habeas corpus, he in effect has no remedy.

We next must determine whether the provisions of article 5561h, effective August 27, 1980, are to be applied to the order of the trial court, dated October 30, 1978, to answer the interrogatory and the subsequent order of contempt on November 16, 1978. Abell contends that the information sought is now privileged and he may not be required by the trial court to violate the law; therefore, he argues, he has been purged from contempt by the enactment of the statute.

▪ The general rule is that there exists a presumption that an act is intended to operate prospectively and not retroactively. If there is any doubt, the intention will be resolved against retrospective operation of a statute. *Gov't Personnel Mutual Life Insurance Co. v. Wear*, 151 Tex. 454, 251 S.W.2d 525 (1952). An act will not be applied retrospectively unless it appears by fair implication from the language used that it was the intent of the Legislature to make it applicable to both past and future transactions. In ascertaining legislative intent, the entire act must be examined, not just isolated provisions in the act. *Merchants Fast Motor Lines v. Railroad Commission of Texas*, 573 S.W.2d 502, 505 (Tex. 1978); *State v. Humble Oil & Refining Co.*, 141 Tex. 40, 169 S.W.2d 707 (1943); *Gayle v. Lockhart*, 167 S.W.2d 230 (Tex.Civ.App.—Waco 1942, writ ref'd).

▪ Article 5561h[3] provides in section 2(a) that communication between a patient/client and a professional is confidential and not to be disclosed except under certain instances set out in sec. 4. Also confidential are "[r]ecords of the identity, diagnosis, evaluation or treatment of a patient/client which are created or maintained by a professional." § 2(b). The privilege may be claimed by the patient/client or someone acting in his or her behalf, and may be claimed by the professional only on behalf of the patient/client. Several exceptions exist to the privilege,

---

3. Article 5561h provides in part:

Section 1. (a) "Professional" means any person authorized to practice medicine in any state or nation, or any person licensed or certified by the State of Texas in the diagnosis, evaluation, or treatment of any mental or emotional condition or disorder, or reasonably believed by the patient/client so to be.

(b) "Patient/Client" means any person who consults, or is interviewed by, a professional for purposes of diagnosis, evaluation, or treatment of any mental or emotional condition or disorder, including alcoholism and other drug addiction.

Sec. 2. (a) Communication between a patient/client and a professional is confidential and shall not be disclosed except as provided in Section 4 of this Act.

(b) Records of the identity, diagnosis, evaluation, or treatment of a patient/client which are created or maintained by a professional are confidential and shall not be disclosed except as provided in Section 4 of this Act. Nothing in this section shall prohibit the disclosure of information necessary in the collection of fees for mental or emotional health services, as provided by Subsection (b)(5) of Section 4 of this Act.

(c) Any person who receives information from confidential communications or records as defined by Section 2, other than the persons listed in Subsection (b)(4) of Section 4 who are acting on the patient's/client's behalf, shall not disclose the information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained.

(d) The prohibitions of this Act continue to apply to confidential communications or records concerning any patient/client irrespective of when the patient/client received services of a professional.

Sec. 3. (a) The privilege of confidentiality may be claimed by the patient/client or by other persons listed in Subsection (b)(4) of Section 4 who are acting on the patient's/client's behalf.

(b) The professional may claim the privilege of confidentiality but only on behalf of the patient/client. The authority to do so is presumed in the absence of evidence to the contrary.

but none are applicable here.[4] A person aggrieved by a violation of the act is given a cause of action for civil damages.[5] Nothing in the act indicates an intent that it be applied prospectively only. To the contrary, the act evidences a specific intention to protect communications and records arising prior to the effective date of the act. Section 2(d) states:

> The prohibitions of this Act continue to apply to confidential communications or records concerning any patient/client irrespective of when the patient/client received services of a professional.

Thus, it is clear that the privilege extends to the matters declared confidential in the act regardless of when they occurred and are applicable to the interrogatory in question here.

Plaintiffs argue that because the trial court's order to answer was prior in time to the effective date of the act, they acquired a vested right in obtaining the answer that the Legislature cannot take away or impair. They point to Article 1, sec. 16 of the Texas Constitution which provides:

> No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts shall be made.

In practice, however, retroactive lawmaking has not been viewed as the gross abuse of

---

4. The exceptions are set out in Sec. 4:

Sec. 4. (a) Exceptions to the privilege in court proceedings exist:

(1) when the proceedings are brought by the patient/client against a professional, including but not limited to malpractice proceedings, and in any criminal or license revocation proceedings in which the patient/client is a complaining witness and in which disclosure is relevant to the claim or defense of a professional;

(2) when the patient/client waives his right in writing to the privilege of confidentiality of any information, or when other persons listed in Subsection (b)(4) of Section 4 who are acting on the patient's/client's behalf submit a written waiver to the confidentiality privilege;

(3) when the purpose of the proceeding is to substantiate and collect on a claim for mental or emotional health services rendered to the patient/client; or

(4) when the judge finds that the patient/client after having been previously informed that communications would not be privileged, has made communications to a professional in the course of a court-ordered examination relating to the patient's/client's mental or emotional condition or disorder, providing that such communications shall not be privileged only with respect to issues involving the patient's/client's mental or emotional health. On granting of the order, the court, in determining the extent to which any disclosure of all or any part of any communication is necessary, shall impose appropriate safeguards against unauthorized disclosure.

(b) Exceptions to the privilege of confidentiality, in other than court proceedings, allowing disclosure of confidential information by a professional, exist only to the following:

(1) to governmental agencies where such disclosures are required or authorized by law;

(2) to medical or law enforcement personnel where the professional determines that there is a probability of imminent physical injury by the patient/client to himself or to others, or where there is a probability of immediate mental or emotional injury to the patient/client;

(3) to qualified personnel for the purposes of management audits, financial audits, program evaluations, or research, but such personnel may not identify, directly or indirectly, a patient/client in any report of such research, audit, or evaluation, or otherwise disclose identities in any manner;

(4) to any person bearing the written consent of the patient/client, or a parent if the patient/client is a minor, or a guardian if the patient/client has been adjudicated incompetent to manage his personal affairs, or to the patient's/client's personal representative if the patient/client is deceased;

(5) to individuals, corporations, or governmental agencies involved in the payment or collection of fees for mental or emotional health services performed by a professional as defined in Section 1 of this Act; or

(6) to other professionals and personnel under the direction of the professional who are participating in the diagnosis, evaluation, or treatment of the patient/client.

5. Sec. 5 provides:

Sec. 5. A person aggrieved by a violation of this Act may petition the district court of the county in which the person resides, or in the case of a nonresident of the state, the district court of Travis County, for appropriate injunctive relief, and the petition takes precedence over all civil matters on the docket of the court except those matters to which equal precedence on the docket is granted by law. A person aggrieved by a violation of this Act may prove a cause of action for civil damages.

power once assumed. *See* Smith, *Retroactive Laws and Vested Rights,* 6 Texas L.Rev. 409, 414 (1928). This is so even though the Texas Constitution, by prohibiting the enactment of retroactive laws, affords greater protection to rights than the protection of the Constitution of the United States which limits its protections to rights founded upon contract. *Mellinger v. City of Houston,* 68 Tex. 37, 3 S.W. 249, 252 (1887).

It is well settled in this state that laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws, or create new obligations, impose new duties, or adopt new disabilities in respect to transactions or considerations past. On the other hand, no litigant has a vested right in a statute or rule which affects remedy or is procedural in nature and which affects no vested substantive right. Changes in such statutes or rules are considered remedial in nature and have been held not to violate the provisions of Article 1, sec. 16 of the Constitution. *Exxon Corp. v. Brecheen,* 526 S.W.2d 519, 525 (Tex.1975); *Texas Water Rights Commission v. Wright,* 464 S.W.2d 642, 649 (Tex. 1971); *Deacon v. City of Euless,* 405 S.W.2d 59, 62 (Tex.1966); *McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898, 900 (1955); *Wilson v. Work,* 122 Tex. 545, 62 S.W.2d 490 (1933); *Phil Pierce Co. v. Watkins,* 114 Tex. 153, 263 S.W. 905, 907 (1924); *Mellinger v. City of Houston, supra; Brantley v. Phoenix Insur. Co.,* 536 S.W.2d 72, 74 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd); *Butler v. State Board of Education,* 581 S.W.2d 751 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n. r. e.); *City of Beaumont v. Bond,* 546 S.W.2d 407, 410 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.); *Aetna Insurance Co. v. Richardelle,* 528 S.W.2d 280, 284 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Harrison v. Cox,* 524 S.W.2d 387, 391 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n. r. e.); *Click v. Seale,* 519 S.W.2d 913, 920 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.); *Petroleum Casualty Co. v. Canales,* 499 S.W.2d 734, 738 (Tex. Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.); *Cooper v. Texas Board of Medical Examiners,* 489 S.W.2d 129, 131 (Tex.Civ.App.—El Paso 1972, writ ref'd n. r. e.); *Commercial Ins. Co. of Newark v. Lane,* 480 S.W.2d 781, 783 (Tex.Civ.App.— Dallas 1972, writ ref'd n. r. e.); *Regal Properties v. Donovitz,* 479 S.W.2d 748, 751 (Tex. Civ.App.—Dallas 1972, writ ref'd n. r. e.); *Bryant v. State,* 457 S.W.2d 72, 78 (Tex.Civ. App.—Eastland 1970, writ ref'd n. r. e.); *Brooks v. Texas Employers Insur. Ass'n,* 358 S.W.2d 412 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.); *Bardwell v. Anderson,* 325 S.W.2d 929, 939 (Tex.Civ.App.— Houston 1959, writ ref'd n. r. e.); *see also* 12 Tex.Jur.2d, Constitutional Law §§ 115–119 (1960).

An analysis of the cases cited demonstrates the consistency of the application of the rule by the courts. In the protection of vested rights, the courts have held that when the statute of limitations has run on a cause of action, a right to assert that as a defense vests in the defendant and cannot be taken away by legislative enactment. *Wilson v. Work, supra; Brantley v. Phoenix Ins. Co., supra; Petroleum Casualty Co. v. Canales, supra.* Likewise, the right of a married woman under disabilities of coverture to disavow a voidable contract was held to be vested at the time of the contract and could not be taken away from her by subsequent legislation. *Click v. Seale, supra.*

Conversely, retroactive laws have been upheld when no vested substantive right has been impaired but only the procedure or remedy has been changed. In such cases, the change will not affect or invalidate steps previously taken in pending litigation, but all subsequent proceedings will be governed by the new statute or rule as of its effective date, provided a reasonable time is afforded in which to act upon the new law. *Exxon Corp. v. Brecheen, supra; Bardwell v. Anderson, supra.* The following changes have been held to be remedial: change of jurisdiction of the court in which the litigation was pending, *Regal Properties v. Donovitz, supra*; authorization of additional remedy for collecting past-due child support, *Harrison v. Cox, supra*; repeal prior to

filing suit of statute granting statutory cause of action, *Aetna Insur. Co. v. Richardelle, supra* ; change of statutory standard of review, *Butler v. State Board of Education, supra; Cooper v. Texas Board of Medical Examiners, supra* ; change in municipal annexation law, *Deacon v. City of Euless, supra* ; change in statute concerning admissible evidence, *Exxon Corp. v. Brecheen, supra* ; amendment requiring suspension of law license during appeal of conviction, *Bryant v. State, supra* ; change in city ordinance reducing salary of city employee, *City of Beaumont v. Bond, supra* ; change in worker's compensation statute for determining average weekly wage, *Brooks v. Texas Employers Insur. Ass'n, supra* ; change in statute defining insurable interest, *McCain v. Yost, supra.* Since in none of these cases was there a savings clause to exempt pending suits, the litigation was governed by the new statute or rule as of its effective date. *See Dickson v. Navarro County Levee Improv. Dist. No. 3*, 135 Tex. 95, 139 S.W.2d 257, 259 (1940).

Plaintiffs argue, however, that they obtained a right to the answer to their interrogatory which "vested" when the trial court ordered Abell to answer the interrogatory and held him in contempt. Plaintiffs contend that the trial court's actions fell into the category of past steps completed in pending litigation prior to the enactment of article 5561h, citing *Goldman v. State*, 277 S.W.2d 217 (Tex.Civ.App.—Amarillo 1954, writ ref'd). The holding of the court in *Goldman*, however, is that the Legislature did not intend for the statute under consideration to be applied retroactively, but only prospectively. *See also Merchants Fast Motor Lines, Inc. v. Railroad Commission of Texas*, 573 S.W.2d 502, 506 (Tex.1978). The *Goldman* court further held that no intent was manifested by the Legislature to deprive the trial court of its jurisdiction over the pending case despite a change in the statute. Even so, that court recognized that a procedural statute was involved.

We have been cited to no case in point by either side, nor have we found a case involving this situation. We must first determine if a vested right to the answer has been created by the trial court's orders.

This Court in *Texas Water Rights Commission v. Wright, supra,* alluded with approval to the definition of vested rights set out by Justice Stayton in the 1887 case of *Mellinger v. City of Houston, supra.* There this Court stated:

A right has been well defined to be a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized or secured by law.

\* \* \* \* \* \*

[A] right, in a legal sense, exists, when, in consequence of the existence of given facts, the law declares that one person is entitled to enforce against another a given claim, or to resist the enforcement of a claim urged by another. Facts may exist out of which, in the course of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right comes into existence there cannot be in law a right; and for this reason it has been constantly held that, until the right becomes fixed or vested, it is lawful for the lawmaking power to declare that the given state of facts shall not fix it, and such laws have been constantly held not to be retroactive in the sense in which that term is used.

In *DuPre v. DuPre*, 271 S.W.2d 829, 832 (Tex.Civ.App.—Dallas 1954, no writ), the court quoted, with approval, the constitutional authority, Cooley, *Const. Lim.* p. 438 (6th ed.). Cooley states that a right cannot be considered a vested right unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable to the present or future enjoyment of a demand or a legal exemption from the demand made by another.

This Court in *City of Dallas v. Trammell*, 129 Tex. 150, 101 S.W.2d 1009, 112 A.L.R. 997 (1937), considered the question of whether a retired policeman had a vested right to the full amount of his pension. We

there held that the Legislature had the power to reduce the pension since a policeman has no vested right to that which constitutes a mere expectancy based upon anticipated continuance of existing law. Even though the right of the policeman to receive a pension became vested when the contingency occurred that entitled him to receive a pension, he had no vested right to a fixed sum of money.

In *Exxon Corp. v. Brecheen*, 519 S.W.2d 170, 183 (Tex.Civ.App.—Houston [1st Dist.] 1975), rev'd on other grounds, 526 S.W.2d 519, 525 (Tex.1975), the court considered a rule of evidence which was changed by the Legislature after the cause of action had arisen and suit filed but before the trial of the case. The court of civil appeals, in a holding expressly approved by the Supreme Court, found error in the trial court's refusal to apply the amended rule at the time of trial. The court then said:

> The statute in question, relating to admissibility of evidence, is procedural and remedial in nature, and all proceedings taken thereafter in pending litigation were governed thereby.

■ In the instant case, the legislative passage of article 5561h creates a privilege in certain activities growing out of professional medical and psychotherapeutic treatment. It thus relates to the admissibility of evidence and is procedural in nature. Neither the trial court's order of October 1978 requiring that the interrogatory be answered nor the order of contempt of November 1978 created any vested right to receive an answer which was not subject to being divested by legislative act. The trial court itself could have changed its mind and rescinded the orders of October and November of 1978, an action it could not have taken had the rights under the order been vested rights. Plaintiffs' right to an answer was at best a mere expectation based upon the anticipated continuance of existing law. When the authority granting the

right has the power and discretion to take that right away, it cannot be said to be a vested right. *City of Dallas v. Trammell, supra; City of Beaumont v. Bond, supra.* Therefore, we hold that no constitutional prohibition exists to the application of article 5561h retroactively.

Moreover, there is some doubt about whether the statute has been applied retroactively. The remedial aspect of the statute relates to the answering of the interrogatory, not the asking of it, and no answer has yet been given. Even so, the statute was in full effect on December 1, 1980 when the trial court heard and overruled Abell's motion to reconsider its prior orders. The privilege afforded by the statute was clearly applicable then.

Having held the provisions of the confidentiality statute, Article 5561h, are applicable to the trial court's order, we must now address plaintiffs' contention that the contacts inquired about are not privileged under the terms of the statute.

We have already discussed the general terms of the statute and quoted the relevant provisions in footnotes. It is not questioned that Abell falls within the definition of a "professional" under the Act. He was licensed by the State of Texas for the diagnosis, evaluation or treatment of a mental or emotional condition or disorder. *See* Article 5561h, section 1(a). Article 5561h makes confidential a patient's/client's identity, or any communication or records of a mental health care professional's diagnosis, evaluation, or treatment of a patient/client. Art. 5561h, secs. 2(a) and 2(b).[6]

It must be emphasized that the statutory privilege is not for the benefit of the professional, but for the protection of the patient/client. The legislature recognized, however, that the patient's/client's privilege to keep his or her identity confidential would fail if the patient/client was required to personally assert the privilege. Accordingly, section 3(b) authorizes the profession-

6. The purpose of the statute was described in *Abell v. Frank*, 625 F.2d 653, 655 (5th Cir. 1980), as follows:

> The statute extends to patients of psychotherapists the privilege to have their identi-

ties and communications with psychotherapists remain confidential.

al to claim the privilege of confidentiality on behalf of the patient/client.

It is apparent that a primary purpose of this statute is to protect a patient/client against an invasion of privacy. The need for such purpose is demonstrated by the facts in this case. The general question posed by interrogatory number 50 seeks a simple "yes" or "no" answer to be a compound inquiry, i. e., whether Abell engaged in a variety of activity ranging from touching to having sexual intercourse with former or current patients. A "yes" answer thus would be required even if Abell merely touched other patients, but the inference drawn from a "yes" answer might be that Abell had sexual intercourse with other patients. This could prove highly embarrassing or perhaps even destructive of existing family relationships for women who were patients/clients of Abell at any time after 1972.

█ We conclude that the statute forbids disclosure of the identity of former patients/clients of Abell. Interrogatory number 50 specifically inquires as to the identity of patients/clients. Furthermore, it is seen from the allegations in plaintiffs' petitions, that the inquiry is focused on the manner of treatment of former or current patients/clients by Abell. The so-called "protective order" issued by the trial court in connection with interrogatory number 50 affords no protection whatsoever to these patients/clients of Abell. While the original copy of Abell's answers are required to be filed with the court in a sealed envelope, it is ordered that a copy of all names and "all other information contained in the sealed envelope" be furnished to plaintiffs' counsel. These attorneys, as well as the plaintiffs, would then be at liberty to contact any of said persons and even to subpoena them for deposition or trial. This obviously would publicly identify such patients/clients of Abell and destroy their statutory privilege of confidentiality and right to privacy.

The trial court was therefore without authority to order Abell to disclose the identity and other information pertaining to his patients/clients and to hold him in contempt for refusing to violate the prohibitions of the privilege statute. In view of this holding, it is not necessary to consider if disclosure of the information requested of Abell violates his patients' constitutional right of privacy.

It is ordered that Abell be discharged.

Dissenting opinion by SPEARS, J., in which CAMPBELL, RAY and WALLACE, JJ., join.

SPEARS, Justice, dissenting.

While I fully agree with the retrospective application of article 5561h, I respectfully dissent from the conclusion the court has reached that the sexual contacts inquired about are privileged under the terms of that statute.

Section 2(a) declares "communication between a patient/client and a professional" confidential. Section 2(b) states that "records of the identity, diagnosis, evaluation, or treatment of a patient/client which are created or maintained by a professional" are likewise confidential. These are separate subsections dealing with separate subjects—communications and records. The word "identity" appears only in the subsection dealing with records. Abell's patient/client records are not involved in this case, only Abell's identification of former patients. Identities are declared confidential only in records where the information contained in the records could be matched with a patient's name. Without any justification found in the language of article 5561h, the court has lumped the two subsections together.

"Communication" has been defined as the action of communicating or imparting; the imparting, conveying or exchange of ideas, knowledge, information, etc., whether by speech, writing, or signs; that which is communicated; the interchange of speech, conversation, or conference. Oxford English Dictionary, Oxford University Press, 1971. Words and terms in a statute are to be given their ordinary, commonly accepted meaning unless it appears from the context

that a different meaning plainly was intended by the legislature. *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex.1969); *Fletcher v. Bordelon*, 56 S.W.2d 313, 318 (Tex.Civ.App.—Beaumont 1933, error ref'd). There is nothing in article 5561h that indicates an intent to extend the privilege to communications that do not relate to the professional relationship between the professional and the patient/client. It certainly was not intended to include extra-marital sexual affairs between the professional and patient/client. Nor can it be argued seriously that a social engagement between the professional and his patient/client would be privileged. Nor would committing an act of physical violence or the defrauding of one by the other in a business joint venture fall within the scope of the professional relationship of the two and thus be privileged. I can conceive of no reason why the privilege should be extended to transactions, events, or facts outside of the scope of the professional relationship. The legislative intent is clear that only those *communications* which fall within the professional relationship, i. e., that relate to the diagnosis, evaluation or treatment of the patient/client are entitled to the privilege.

An examination of the entire act demonstrates that the legislature did not intend for the privilege to be an absolute one; the numerous exceptions to the privilege contained in section 4 are proof of that. Subsection (a) sets forth four exceptions applicable in court proceedings, none of which are applicable here, and subsection (b) sets forth another seven exceptions. Many of the exceptions in section 4 relate to disclosure by the professional to third persons for some legitimate societal purpose, e. g., disclosure to government agencies, medical and law enforcement agencies, auditors, evaluators, and research agencies, personal representatives such as guardians, other consulting professionals, and *even fee collection agencies and governmental agencies from which payment for services rendered is sought.* Thus it is clear that the legislature, while intending to make confidential those communications and records pertaining to mental illness or emotional health,

did not intend that the privilege be totally encompassing. The statute's purpose is more of a protection against an invasion of privacy rather than a privilege. *Martinez v. Rutledge*, 592 S.W.2d 398, 400 (Tex.Civ. App.—Dallas 1979, writ ref'd n. r. e.). Even the title of the act reflects that a limited privilege was contemplated, not the complete one described by the court:

> An act relating to the confidentiality *of certain information* pertaining to the mental or emotional health of an individual; . . . . 1979 Tex.Gen.Laws, ch. 239, at 512. (Emphasis added.)

Abell has specifically denied in his answers to interrogatories and admissions that his sexual contacts with the plaintiffs were a part of his professional treatment of the plaintiffs. It follows, therefore, that any sexual contacts had with any other female patients or clients were likewise not a part of his treatment of them and were not encompassed within his professional relationship with them. Even though divulging the identities and information asked about in interrogatory 50 might be embarrassing to some of Abell's former patients/clients, the information does not come within the privilege of the statute. To broaden the privilege as the court has done seems to be in direct conflict with the Ethical Standards of Psychologists as stated by the American Psychological Association. These standards provide in part:

### PRINCIPAL 6.

### WELFARE OF THE CONSUMER

a. Psychologists are continually cognizant of their own needs and of their inherently powerful position *vis a vis* clients, in order to avoid exploiting their trust and dependency. Psychologists make every effort to avoid dual relationships with clients and/or relationships which might impair their professional judgment or increase the risk of client exploitation. Examples of such dual relationships include treating employees, supervisees, close friends or relatives. Sexual intimacies with clients are unethical.

While one can appreciate Abell's ostensible desire not to "kiss and tell," plaintiffs in this case have alleged that Abell's seductions of them were but single sordid chapters in his pursuit of a course of conduct during psychotherapy which was not unusual or unique to him. The interrogatories and admissions on file strongly hint that Abell's defenses to plaintiffs' action will include his contention that each of the plaintiffs initiated the sexual advances. Upon trial, the jury will be asked to judge the credibility of Abell's version of what happened *vis a vis* each plaintiff's version as to events occurring behind closed doors to which there were no other witnesses. It cannot be denied that under these circumstances it is important, perhaps even crucial, to plaintiffs' case to be afforded an opportunity to show a course of conduct of the defendant Abell.

Abell complains that if he is required to answer the interrogatory, he is placed in an impossible situation. He asserts that answering the interrogatory will subject him to suits for damages brought by his former patients under section 5 of the act. The quick answer to this argument is that since the sexual contacts inquired about are not privileged communications, no cause of action for violating the statute arises. Furthermore, a professional who gives testimony or evidence in the course of a judicial proceeding is absolutely privileged and immune from civil liability based on his testimony. *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942); *Clark v. Grigson*, 579 S.W.2d 263, 265 (Tex. Civ.App.—Dallas 1978, writ ref'd n. r. e.). This immunity from civil liability is essential to encourage unrestrained access to the courts and full development of the facts in proceedings designed to find the truth, and overrides competing considerations in most cases. *Lehnhard v. Moore*, 401 S.W.2d 232, 235 (Tex.1966).

Since I would deny Abell's application on statutory grounds, it is necessary to address his next contention that a constitutional right of privacy extends to the psychotherapist-patient relationship and therefore excuses Abell from answering the interrogatory. The alleged right is being asserted on behalf of Abell's former patients and draws its substance from the uniqueness of the relationship and the psychological needs and expectations of his patients. Abell also claims that his own personal right of privacy protects him from answering an interrogatory disclosing his sexual contact with former patients.

An individual's constitutional right of privacy has been recognized by both federal and Texas courts although these decisions do not define with any specificity just exactly what this right encompasses.[1] There is universal recognition that in any society a total right of privacy is infeasible, particularly where disclosure is concerned.[2] In *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928), Justice Brandeis called the right to be let alone "the most comprehensive of rights and the right most valued by civilized men." Later decisions, however, indicate that only personal rights that can be deemed fundamental or implicit in the concept of ordered liberty are included in the guarantee of personal privacy. *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977); *Paul v. Davis*, 424 U.S. 693, 713, 96

---

1. *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Industrial Foundation, etc. v. Texas Industrial Accident Bd.*, 540 S.W.2d 668 (Tex.1976).

2. Various commentators and authors have attempted to define the right of privacy. *See* Comment, *Due Process Privacy*, 1979 Cinn.L.F. 449 (1979); Comment, *A Taxonomy of Privacy: Repose, Sanctuary, and Intimate Decision*, 64 Calif.L.Rev. 1446 (1976). For a discussion of whether the right of privacy is in fact one right or group of many different rights, *see* Gavison, *Privacy and the Limits of Law*, 89 Yale L.J. 421 (1980). For a definition of the common law cause of action of privacy, *see Billings v. Atkinson*, 489 S.W.2d 858, 859–60 (Tex.1973); Prosser, *The Law of Torts*, 4th ed., 802 et seq. (1971).

S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668 (Tex.1976).

The basis for the right to privacy in varying contexts, is found in the First Amendment, *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); in the Fourth and Fifth Amendments, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); in the penumbra of the Bill of Rights, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and in the concept of liberty guaranteed by the Fourteenth Amendment, *Roe v. Wade, supra.*

To date, several areas have been denoted constitutionally protected zones of privacy: activities relating to marriage, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); procreation, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); child rearing, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); contraception, *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); abortion, *Roe v. Wade, supra.* The Court deemed these personal activities to be so fundamental as to require constitutional protection from state interference.

When the court finds a personal privacy right to be fundamental, the state must show a compelling interest before invading the designated zone of privacy. *Roe v. Wade, supra*, 410 U.S. at 178, 93 S.Ct. at 739. However, where a privacy interest has been recognized but not afforded "fundamental" status, the state need only show a rational basis for its interference or regulation in the area.

In *Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the U.S. Supreme Court recognized that the cases involving privacy concern two different kinds of interests. "One is the individual interest in avoiding disclosure or personal matters, and another is the interest in independence in making certain kinds of important decisions." We are here concerned with the first—disclosure.[3] Although recognizing the interest of the individual in avoiding disclosure, the *Whalen* court held that a New York program that required disclosure of the names of patients using certain drugs did not pose a sufficiently grievous threat to establish a constitutional violation and that the State's regulation had a rational basis. The *Whalen* court established that the interest of an individual in avoiding disclosure of personal matters is not all-encompassing, but the individual's right to privacy must be weighed against the impact and threat involved in a state requiring disclosure.[4] Where the impact of threat is sufficiently grievous, constitutional protection is afforded and the state must show a compelling interest in requiring disclosure.

From a reading of *Whalen v. Roe* and the prior cases involving privacy, there appear to be two approaches involved in analyzing an individual's right to privacy. A distinction arises between cases dealing with a state's regulation of *activities and relationships* and a state's requirement of *disclosure* of these activities. In the area of disclosure, a two-step process of inquiry emerges. The court must first determine whether the information sought to be disclosed concerns a fundamental privacy right, i. e., a protected zone of privacy. If the information does not concern a protected zone of privacy, then according to *Whalen* the court must still weigh the impact and threat of disclosure against the state's interest involved. This approach recognizes that many private activities may not be entitled to privacy protection as fundamental rights, but

---

3. *See Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *California Bankers Ass'n v. Schultz*, 416 U.S. 21, 79, 94 S.Ct. 1494, 1526, 39 L.Ed.2d 812 (1974).

4. In *Whalen v. Roe*, the court held "that neither the immediate nor the threatened impact of the patient-identification requirements . . . on either the reputation or the independence of patients . . . is sufficient to constitute an invasion of any right or liberty protected by the Fourteenth Amendment."

nevertheless, a person may have a valid interest in maintaining the privacy of those activities.

Significantly, the U.S. Supreme Court has not extended the zone of privacy to the analogous doctor-patient relationship;[5] however, several decisions of other courts have indicated that a patient's right of privacy affords him protection from forced disclosure of confidential communications made during treatment or therapy. *Hawaii Psychiatric Society v. Ariyoshi*, 481 F.Supp. 1028 (1979); *Caesar v. Mountanos*, 542 F.2d 1064 (9th Cir. 1976); *In re Lifschultz*, 2 Cal.3d 415, 85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1 (1970). Nevertheless, these cases also have indicated exceptions to this rule such as when a patient places his mental condition in issue in a court proceeding.

The rationale for those decisions protecting the privacy involved in the psychotherapist-patient relationship is the concern over disclosure of highly personal matters and its effect on the patient. The unique nature of psychotherapy involves a probing of the patient's emotions and subconscious thoughts and requires an environment of total confidentiality and trust.[6]

Under the circumstances presented in this case, however, it is unnecessary to determine the broad question concerning whether the psychotherapist-patient relationship is a fundamental personal right protected by a constitutional zone of privacy. As discussed earlier the conduct or activity inquired about here in the interrogatory is not the type of activity covered by that relationship. Abell has consistently admitted that sexual contact with his patients was not a form of therapy and his patients were not billed for this activity.

The question, therefore, resolves into whether Abell's former patients have a privacy right in the fact of psychological treatment which would spare Abell from disclosing their names. Even though sexual contact was not encompassed in this psychotherapist-patient relationship, the fact that these women were former patients indicates that they were in fact receiving some sort of treatment. Treatment for mental illness is not the bane it once was. The fact that the profession of psychotherapy has flourished indicates people's recognition and acceptance of psychotherapy. Many insurance policies now cover psychotherapy. In this enlightened age, the fact of treatment is not so fundamental to our concept of ordered liberty that disclosure of that fact in a civil proceeding constitutes an unconstitutional invasion of privacy. The U.S. Supreme Court in *Paul v. Davis, supra* 442 U.S. at 712, 96 S.Ct. at 1166, intimated that a person's interest in his or her reputation is not a fundamental right.

A court must, therefore, under the mandate of *Whalen v. Roe*, weigh the threat of disclosure of the fact of treatment and its impact on the individual against the state's interest in enforcing its discovery orders in a civil proceeding.

The trial court's order in this case provides significant protection against public

---

5. In *Whalen v. Roe, supra*, the court did not uphold the district court's decision that "the doctor-patient relationship is one of the zones of privacy accorded constitutional protection." Id., 429 U.S. at 596, 97 S.Ct. at 874–75.

6. The necessity of the patient's total submission to the psychotherapist has been described as follows:

Psychotherapy probes the core of the patient's personality. The patient's most intimate thoughts and emotions are exposed during the course of treatment. "The psychiatric patient confides [in his therapist] more utterly than anyone else in the world .... [H]e lays bare his entire self, his dreams, his fantasies, his sin and shame." (*Taylor v. United States* (1955) 95 U.S.App.D.C. 373, 222 F.2d 398, 401, quoting Guttmacher and Weinofen, Psychiatry and the Law 272 (1952)). The patient's innermost thoughts may be so frightening, embarrassing, shameful or morbid that the patient in therapy will struggle to remain sick, rather than to reveal those thoughts even to himself. The possibility the psychotherapist could be compelled to reveal those communications to anyone ... can deter persons from seeking needed treatment and destroy treatment in progress [citing J. Katz, J. Goldstein & A. Darshowitz, Psychotherapy, Psychoanalysis and the Law 726–27 (1967)]. *Caesar v. Mountanos*, 542 F.2d 1064, 1071–72 (9th Cir. 1976) (Hufstedler, J. dissenting).

disclosure of these names. The patients' names are to be disclosed only to the parties and their attorneys. Counsel are prohibited from making public disclosure of such names. The information will be presented to the court in a sealed envelope, and the court will maintain continual jurisdiction over the disclosure of any names, including the issuance of subpoenas. The names will be correlated to a number or letter of the alphabet for any future reference. Much stronger protection is present here than that afforded the patients in *Whalen.*

Since the fact of psychological treatment is not a fundamental right, the inquiry becomes whether the state has a rational basis for the enforcement of the trial court's discovery order in this case. Having examined the threat and impact of public disclosure of these patients' fact of treatment, we must weigh the state's interest in disclosure under the present circumstances.

I would hold that the state has a valid and rational basis for requiring discovery in this instance. The trial court has already deemed the material relevant. Abell, and vicariously his patients, are claiming an exemption or privilege from furnishing information in this litigation. Dean Wigmore has stated: "For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence." 8 Wigmore, *Evidence* § 2192. *See United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1949). As a general rule, every citizen has the testimonial duty to give a court of law the information he has, which duty exists not merely for the case at bar, but to the community at large and forever for the ascertainment of truth in a trial which seeks the truth. *Lehnhard v. Moore,* 401 S.W.2d 232, 235 (Tex.1966). The duty to testify may on occasion be burdensome and embarrassing. "It may cause injury to a witness's social and economic status. Yet the duty to testify has been regarded as so necessary to the administration of justice that the witness's personal interest in privacy must yield to the public's overriding interest in full disclosure." *United States v.*

*Calandra,* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974) ctg. *Blair v. United States,* 250 U.S. 273 at 281, 39 S.Ct. 468 at 471, 63 L.Ed. 979 (1919).

The pettiness and personality of the individual trial disappear when we reflect that our duty to bear testimony runs not to the parties in the present cause, but to the community at large and forever. 8 Wigmore, *Evidence* § 2192; *Lehnhard v. Moore, supra.* Further " . . . no man is to be denied the enforcement of his rights merely because another possesses the facts without which the right cannot be ascertained and enforced." 58 Am.Jur., *Witnesses* § 29; 8 Wigmore, *Evidence* § 2212.

I conclude that the state has a strong interest in providing a forum for resolution of claims and in ascertaining the truth for the enforcement of rights. Further the state has the power to regulate its authority over discovery matters. I cannot envision a day when every request for admission or interrogatory would be answered with a federal constitutional claim of privacy. To accept Abell's contentions would result in a flood of cases in the federal courts seeking relief in discovery matters based on the constitutional right to privacy. In *Lehnhard v. Moore, supra,* at 235, this court quoted with approval this statement:

> Undoubtedly the duty so imposed at times involves material sacrifice, even invasion of personal privacy, and is carried out at great inconvenience, but this is the price we pay to secure the effective administration of justice.

The state also has an interest in the health and welfare of its citizens and the regulation of psychotherapists. As stated in *Roy v. Hartogs,* 366 N.Y.S.2d 297, 301, 81 Misc.2d 350 (1975):

> . . . there is a public policy to protect a patient from the deliberate and malicious abuse of power and breach of trust by a psychiatrist when the patient entrusts to him her body and mind in the hope that he will use his best efforts to effect a cure. That right is best protected by permitting the victim to pursue civil rem-

edies, not only to vindicate a wrong against her but to vindicate the public interest as well.

The former patients of Abell are sufficiently protected by the court's order and their privacy must give way to the plaintiffs' right to pursue their civil remedies.

Finally, I address Abell's argument that he is protected from disclosing his sexual intimacies because, as Abell asserts, this is adult consensual sexual behavior. As discussed earlier, the right of privacy has been extended to many areas dealing with the sexual relationship. Yet the right has not been extended to include sexual intercourse between consenting adults.[7] The U.S. Supreme Court has recognized the states' interest in regulating adultery, *McLaughlin v. Florida*, 379 U.S. 184, 196, 85 S.Ct. 283, 290, 13 L.Ed.2d 222 (1964); *Hollenbaugh v. Carnegie Free Library*, 436 F.Supp. 1328 (W.D. Pa.1977); in regulating homosexual conduct, *Doe v. Commonwealth's Attorney*, 403 F.Supp. 1199 (E.D.Va.1975) aff'd 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1967); and in regulating prostitution, *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). Here the state is not regulating any protected conduct—it is only requiring disclosure where the trial court has deemed such disclosure relevant to a civil proceeding. Abell is afforded ample protection by the trial court's order. I cannot stretch the right of privacy to protect Abell from limited disclosure of facts so necessary for the just adjudication of plaintiffs' claim.

Finally, the court's opinion suggests that the interrogatory is too broad, that it goes far beyond sexual activity and requires the names of those with whom defendant has had virtually any physical contact or touching whatsoever, including shaking hands. I cannot agree. The clear import of the interrogatory read in its entirety and in context asks only about *sexual* contacts and *sexual* touching, not friendly platonic gestures of friendship or assurance without sexual connotations.

It is difficult to fault the court for its chivalrous desire to protect the unnamed female former patients of Abell, but I venture to say that we would not have been as protective of former male patients. This gender-based discrimination, though, is consistent with former decisions of this court. *See In the Interest of T.E.T.*, 603 S.W.2d 793 (Tex.1980). The sad result of this chivalry, however, is the needless mischief inflicted on the time-honored goal of a trial which is to seek the truth. Fetters and chains placed on the search for truth drain the very blood from the body of justice and should be narrowly construed else we frustrate the very purpose of a trial. The court's decision commits further injustice, unintended by the legislature. It allows a professional engaged in psychotherapy to inflict serious psychological damage to his patient while it cloaks him with the protection of the privilege to conceal his own wrongs. Finally, it has allowed the privilege to be claimed for the benefit of the wrongdoer, not the wronged. Under the circumstances of this case, Abell should not be excused from answering the interrogatory. Article 5561h does not prohibit Abell from disclosing the conduct inquired about in the interrogatory, and the constitutional right to privacy has not been extended to cover the activity or relationship involved in this case. The writ of habeas corpus should be denied.

CAMPBELL, RAY and WALLACE, JJ., join in this dissenting opinion.

---

7. In *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 68, 93 S.Ct. 2628, 2641, 37 L.Ed.2d 446 (1973), the court stated: "Our Constitution establishes a broad range of conditions on the exercise of power by the States, but for us to say that our Constitution incorporates the proposition that conduct involving consenting adults only is always beyond State regulation, is a step we are unable to take."