TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00465-CV







Joseph R. Heffington, Appellant



v.



City of Austin, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 437,324, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







PER CURIAM



 Appellant Joseph R. Heffington sued appellee the City of Austin, alleging that the
City took, damaged, or destroyed his property by first promulgating an ordinance limiting the
height to which he could build on his Sixth Street property, and then denying his application for
transferrable development rights. See Tex. Rev. Civ. Stat. Ann. art. 6145-13 (West Supp. 1996);
Austin City Ordinance 851024-Q. The trial court granted the City's motion for summary
judgment. Heffington, by a single point of error, alleges that the district court erred in granting
the motion. We will affirm the trial-court judgment.



THE CONTROVERSY


 On March 1, 1984, the City promulgated the Sixth Street Overlay Ordinance
840301-S, which became effective January 1, 1985. Under the terms of the ordinance, the height
of buildings located along the Sixth Street corridor, including Heffington's property, was limited
to forty-five feet. Under the prior zoning ordinance, owners on Sixth Street could have
constructed a building up to 200 feet in height. To provide for the completion of development
plans begun under the prior zoning ordinance, a property owner not subject to site plan review
had until March 1, 1986 to secure a building permit. (1) City of Austin Code, Chap. 13-2, § 1051. 
The time period in which to establish the right to build a 200-foot building was later extended to
May 15, 1986. Austin City Ordinance 860320-J.

 Heffington alleged that he bought the subject property on July 31, 1984, months
after the Sixth Street overlay ordinance had been promulgated.

 The City passed a series of ordinances addressing the preservation of the capitol
view beginning in 1981. By December 30, 1984, the City issued a moratorium on a building
permit or site plan for any structure that exceeded a calculated height. Austin City Ordinance
841206-A.

 Sometime in January 1985, J. B. Sanchez signed a purchase money agreement to
buy Heffington's property. Sanchez defaulted on April 3, 1985. Heffington claimed that Sanchez
defaulted because the capitol view preservation statute was pending in the legislature. The
legislature promulgated the capitol view preservation statute, now codified at Texas Revised Civil
Statutes 6145-13, on May 22, 1985; the statute was effective immediately. Tex. Rev. Civ. Stat.
Ann. art. 6145-13 (West Supp. 1996). The statute's purpose was to preserve the view of the state
capitol along various axes by limiting the heights of buildings along the view corridors. The
permissible heights were calculated by formula. Application of the formula to Heffington's
property resulted in a height limitation of approximately sixty feet.

 Article 6145-13 also provided that the City Council could choose to grant
transferable construction rights or adopt other measures "reasonable to mitigate the impact of [the
act] in an affected view corridor," provided that the affected property owners apply for and the
City approve such measures by December 31, 1985. (2)

 On October 24, 1985, the City Council passed Ordinance 851024-Q, which
authorized the transferable development rights permitted by Article 6145-13. (3) Ordinance 851024-Q provided that transferrable development rights were to be calculated by subtracting the
maximum potential gross floor area of a building located wholly or partially in a capitol view
corridor overlay zone from the gross floor area otherwise permissible in the underlying district. 
The ordinance further provided that the owner of the donor lot must file an application for
transferable development rights by November 30, 1985, and that the City must act on the
application within thirty days. 

 Heffington first applied for transferable development rights on November 26, 1985,
asking for the transferrable development rights equal to the difference between the height of his
present building and 200 feet. On or about December 16, 1985, the City notified him that the
application could not be processed because he had failed to comply with Chapter 13-2A. 
Heffington subsequently filed a second application.

 On December 30, 1985, James B. Duncan, director of the City's Office of Land
Development Services, notified Heffington by letter that he was not eligible for development
rights for the air space above sixty feet because his property was already subject to the forty-five
foot limit of the Sixth Street overlay ordinance. Duncan's letter explained that, to develop under
the prior zoning ordinance, Heffington would have to comply with section 1051(a) of Chapter 13-2A. Section 1051(a) required that he obtain a building permit by March 1, 1986 to preserve his
opportunity to build to 200 feet. Heffington neither appealed Duncan's decision nor applied for
a building permit.

 Heffington filed suit against the City on February 27, 1988. The City filed its first
supplemental motion for summary judgment on March 14, 1995, on the grounds, among others,
that there was no taking, that Heffington was not entitled to transferable development rights, and
that the City was not liable because any injury Heffington suffered resulted from the passage of
Article 6145-13.



ANALYSIS


 Heffington first claims that the City took or damaged his property by promulgating
the Sixth Street Overlay Ordinance, which created the forty-five foot limitation. We disagree. 
Heffington bought the property on July 31, 1984, seven months after the Sixth Street ordinance
was promulgated. His deposition shows that he had actual as well as constructive notice of the
ordinance when he bought the property. He stated in his deposition that he bought the property
regardless because it was a "good deal" on a price-per-square-foot basis. We hold that because
the ordinance was promulgated before he bought the property, he may not complain of it. See
City of Dallas v. Meserole, 155 S.W.2d 1019, 1022 (Tex. Civ. App.--Dallas 1941, writ ref'd)
(person who began construction after petition for annexation was filed but before city had drafted
ordinance could not claim innocent existing use not subject to regulation). (4)

 Next, Heffington claims that the city took, damaged, or destroyed his property by
denying his application for transferrable development rights. The City had to approve
transferrable development rights by December 31, 1985. Tex. Rev. Civ. Stat. Ann. art. 6145-13
(West Supp. 1996). On December 31, 1985, the only absolute right Heffington had under the
previous ordinance was the right to build to forty-five feet. His complaint is that the City did not
recompense him for the loss of the opportunity available under the previous ordinance to apply
for and receive a building permit by March 1, 1986. 

 An opportunity is a property right only to the extent that it has vested. A vested
right must be more than a mere expectation that the present laws will continue; it must be an
entitlement to the present or future enjoyment of a demand or a legal exemption from the demand
made by another. Ex parte Abell, 613 S.W.2d 255, 258 (Tex. 1981); see Beck v. Beck, 814
S.W.2d 745, 748-49 (Tex. 1991), cert. denied 503 U.S. 907 (1992) (estate of decedent who did
not exercise right to void invalid prenuptial agreement was bound when such agreements were
later legitimized). Heffington's ability to build a 200-foot building was an expectancy rather than
an entitlement. The right would vest, at the earliest, when he filed a building permit. We can
only speculate whether he would have timely filed for a permit. We conclude that Heffington did
not have a vested right to apply for and receive a building permit such that he is entitled to
compensation for the loss thereof. See City of Pharr v. Tippitt, 616 S.W.2d 173, 175 (Tex. 1981)
(city can amend zoning ordinance as public necessity demands); City of University Park v.
Benners, 485 S.W.2d 773, 778 (Tex. 1972), appeal dismissed, 411 U.S. 901 (1973) (city could
eliminate existing use).

 Further, Heffington's section 1051(a) opportunity to build a 200-foot building was
preempted by Article 6145-13's provision that no building over sixty feet could be built at that
site. Therefore, any right that existed was eliminated by Article 6145-13, legislation passed by
the State of Texas rather than the City of Austin. The City is not liable for the acts of the State. 
We overrule Heffington's point of error. We affirm the trial-court judgment. 



Before Justices Powers, Aboussie and Kidd

Affirmed

Filed: July 31, 1996

Do Not Publish
1.   Section 1051 provided that:


In order to provide for the completion of development plans begun under the
zoning ordinance in effect prior to the date of adoption of these Zoning
Regulations, the following time allowances shall apply:


 Any property owner whose proposed development is not subject
to site plan review shall have until March 1, 1986 to secure a
building permit under the Zoning Ordinance applicable
immediately prior to the January 1, 1985 effective date of these
Zoning Regulations unless application for a change in zoning is
filed by the property owner and approved after January 1,
1985. . . . Construction must begin within twelve months
following the receipt of a building permit.
2.   Section 5 of Article 6145-13 provided:


The governing body of any city, including a home-rule city, affected by the
provisions of this Act may grant transferable construction rights or adopt
other measures that are reasonable to mitigate the impact of this Act in an
affected view corridor, on application by affected property owners, prior to
December 31, 1985. After December 31, 1985, the governing body may not
grant additional transferable construction rights, and all applicable local
ordinances relating to the grant of transferable construction rights or other
measures mitigating the impact of this Act expire effective January 1, 1986. 
Any such construction right shall expire and forever terminate unless
exercised within 36 calendar months from the date the local governing body
last approves the transfer of the construction right. In any event, any such
ordinance having as its subject matter transferable construction rights or
measures to mitigate the impact of this Act must be consistent with the
requirements of the city's zoning ordinance and land use plan.


Tex. Rev. Civ. Stat. Ann. art. 6145-13 (West Supp. 1996).

3.   Ordinance 851024-Q provided that "transferable development rights":


shall be expressed in square feet of gross floor area and computed by
subtracting the maximum potential gross floor area of a building located
wholly or partially in a Capitol View Corridor Overlay Zone and designed to
conform with these zoning regulations from the gross floor area otherwise
permissible in the underlying district, as certified by the Director of the
Office of Land Development Services pursuant to this Section.
4.   Heffington claims on appeal that he did not know about the Sixth Street ordinance
when he signed the earnest money contract to buy the property. However, the portion of
the deposition he cites reflects that he was discussing his knowledge of the pending capitol
overlay statute when he signed the earnest money agreement to sell the property to
Sanchez.