# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00555-CV

### In re Estate of Ruby Greer Wallace, Deceased

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. 87195, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Barbara Wallace Hernandez filed an application for a declaration of heirship in the Estate of Ruby Greer Wallace. She pleaded that she was the only child of her deceased father William Edward Wallace, who was one of Ruby's three children. Appellants Carole Ann Wallace and Dennis Arthur Wallace Jr., Ruby's two other children, contested Barbara's application.[1] Following a bench trial, the trial court declared that Carole, Dennis Jr., and Barbara each had an one-third interest in the estate. On appeal, Carole and Dennis Jr. contend that the trial court erred by applying current statutory provisions, by admitting a genetic test report, and by excluding testimony concerning alleged statements by Ruby and William Edward. They also challenge the sufficiency of the evidence to support the judgment. For the reasons that follow, we affirm the judgment.

---

[1] Because many of the persons involved in this case have the same surname, we refer to the parties and other persons by their given names.

**BACKGROUND**

Ruby had three children: Carole, Dennis Jr., and William Edward. William Edward died intestate and without a determination of heirs in March 1960. Ruby died intestate in April 1989.[2] Barbara filed this application for declaration of heirship in Ruby's estate in August of 2007. She pleaded that she was the granddaughter of Ruby and the only child of William Edward. William Edward was married to Barbara's mother Norma Jean Gooding from November 1, 1958 to April 22, 1959, and Barbara was born on August 13, 1959.

Carole, Dennis Jr., and an attorney ad litem filed answers to Barbara's application. Carole and Dennis Jr. disputed that Barbara was William Edward's daughter. Contending that good cause existed, Carole and Dennis Jr. moved for the trial court to order genetic testing and removal of William Edward's remains pursuant to the Probate, Health and Safety, and Family Codes. *See* Tex. Prob. Code § 53A; Tex. Health & Safety Code § 711.004 (addressing removal of remains); Tex. Fam. Code §§ 160.501–512 (addressing genetic testing).[3] The trial court granted their motion and ordered genetic testing and removal of remains. The trial court ordered that the genetic testing be performed by Orchid Cellmark, a DNA testing laboratory.

---

[2] Carole and Dennis Jr. filed an application to probate a purported will of Ruby's in 1994, but Barbara opposed the application and the trial court refused to admit the will to probate. This Court affirmed the trial court's order, and the Texas Supreme Court denied the Wallaces' application for writ of error in 1996. *See Wallace v. Hernandez*, No. 03-95-00421-CV (Tex. App.—Austin February 28, 1996, writ denied) (mem. op., not designated for publication), *available at* http://www.3rdcoa.courts.state.tx.us/opinions/HTMLopinion.asp?OpinionId=1072.

[3] Section 53A of the Probate Code provides that the court "shall, on the request of a party to the proceeding [to declare heirship], order one or more specified individuals to submit to genetic testing as provided for in Subchapter F, Chapter 160, Family Code." *See* Tex. Prob. Code § 53A(a). That section also provides that a trial court may order the genetic testing of a deceased individual and, if necessary, the removal of the remains of the deceased individual for good cause. *Id*. § 53A(f).

William Edward's remains were exhumed, and bone samples were sent to Orchid Cellmark. Orchid Cellmark conducted tests and provided a written report in 2009 and an amended report dated January 6, 2010.[4] Orchid Cellmark found that William Edward could not be excluded as the biological father of Barbara and determined that there was more than a 99% probability that he was Barbara's father, "as compared to an untested, unrelated male of the North American Caucasian population." After receiving the report, Carole and Dennis Jr. moved for the trial court to order a second round of genetic testing with a different company pursuant to section 53A(c) and (d) of the Probate Code. *See* Tex. Prob. Code § 53A(c), (d). The trial court signed an agreed order for the additional round of testing in February 2010, but the appointed company was unable to complete a test and did not provide a written report.

The bench trial occurred on May 11, 2010. The witnesses included the parties and Adelia Felps, who was married to William Edward after his divorce from Norma Jean. Barbara testified about her relationship with Ruby and the Wallace family. She testified that "Grandmother took interest in being part of my life" and that Barbara was "about five when [she] started going to see [her] grandma." She also answered "[o]f course" when asked if Ruby introduced Barbara as her granddaughter. Barbara testified that, prior to this litigation, no one in the family stated to her that she was not William Edward's daughter. She also testified to handwritten notes written by her mother Norma Jean about her marriage and receipt of child support from William Edward. The note

---

[4] The report signed in January 2010 states that it amends the report dated August 31, 2009, by adding an affidavit to the report. It also states that "[p]rocedures used in the analysis in this case adhere to standards adopted by DNA Advisory Board on DNA analysis methods."

concerning support was on the back of a photograph of William Edward and stated that he paid "$10 a week" and that he was "killed in March 1960."

Carole and Dennis Jr. also testified about the relationship between Ruby, the family, and Barbara. Carole testified that "[t]here were occasions of infrequent contact" between Ruby and Barbara and that they were "few and far between." Dennis Jr. answered "yes" when asked if he had knowledge of Barbara when she was born and if she was introduced as a Wallace family member. He also testified that Ruby "treated [Barbara] very well," that Ruby "spent some time with her at the farm," and that "there were times when [his] children and Barbara would go with [Ruby] for recreation places." Carole further testified concerning the marriage between Norma Jean and William Edward and his trips during the time period that Barbara was probably conceived.

The trial court sustained objections to testimony by Carole, Dennis Jr., and Adelia concerning alleged statements made by William Edward and Ruby. The alleged statements included that Barbara was not William Edward's daughter, that Norma Jean had been unfaithful during her marriage to William Edward, that Norma Jean had refused sexual relations with him, and that William Edward "hadn't had contact with her." Carole and Dennis Jr. made offers of proof concerning these alleged statements.

The exhibits admitted at trial included the marriage certificate of Norma Jean and William Edward, William Edward's petition for divorce, the divorce decree between Norma Jean and William Edward, the Orchid Cellmark report, and a "Certification of Vital Record." In his original petition for divorce filed in February 1959, William Edward stated that he and Norma Jean were married on November 1, 1958 and "continued to live together as husband and wife until on or around January 3, 1959" and that "no child was born during this marriage but that [Norma Jean was]

4

at this time pregnant." In the divorce decree, the trial court found "that no children have been born to this union, but one [was] expected in August, 1959" and awarded "sole custody and control of this child" to Norma Jean. The certification is of Barbara's birth on August 13, 1959, and identifies her parents as Norma Jean and William Edward. The certification was issued in August 2007 but states that it was "a true and correct abstract of the original record."

At the conclusion of the trial, the trial court found that the "heirship of Decedent [Ruby] has been fully and satisfactorily proved" and that Barbara had an one-third interest in the estate. Carole and Dennis Jr. filed a motion for new trial but did not request findings of fact and conclusions of law. The motion for new trial was overruled by operation of law. This appeal followed.

**ANALYSIS**

Carole and Dennis Jr. raise six issues on appeal. They contend that: (i) there is no presumption of paternity that applies in this case and that Barbara failed to prove paternal inheritance rights by clear and convincing evidence; (ii) the trial court erred when it retroactively applied current statutory provisions, including presumptions regarding paternity, to a decedent who died 50 years ago; (iii) the trial court erred by admitting the Orchid Cellmark report into evidence without a sponsoring witness; (iv) Carole and Dennis Jr.'s due process rights were violated when the trial court admitted the Orchid Cellmark report without providing an opportunity for cross-examination; (v) the trial court abused its discretion and committed reversible error when it excluded evidence regarding personal and familial history on hearsay ground; and (vi) the evidence that was properly admitted

5

was not legally or factually sufficient to support a finding by clear and convincing evidence that Barbara was William Edward's daughter.

*Standard of Review*

When a trial court does not issue findings of fact and conclusions of law, as is the case here, we imply all findings necessary to support the judgment. *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)). We affirm the judgment "if it can be upheld on any legal theory that finds support in the evidence." *Worford*, 801 S.W.2d at 109; *see Point Lookout W., Inc. v Whorton*, 742 S.W.2d 277, 278 (Tex. 1987).

Appellants' issues also raise matters of statutory construction, which we review de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern in construing a statute is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We consider the entire act, not isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

*Applicable Statutory Provisions*

Primarily in their first two issues, Carole and Dennis Jr. contend that there were no relevant presumptions of paternity at the time of William Edward's divorce from Norma Jean and

6

his death, and that, under the relevant statutory provisions at that time, Barbara was not William Edward's heir. *See* Act of April 4, 1955, 54th Leg., R.S., ch. 55, § 42, 1955 Tex. Gen. Laws 88, 102 (current version at Tex. Prob. Code § 42). Although they acknowledge that the judgment declaring heirship does not state what versions of the Probate Code or Family Code that the trial court applied, they urge that it is clear from the trial transcript that the court employed some combination of current versions of sections 42 and 53A through 53E of the Probate Code and chapter 160 of the Family Code and the presumptions regarding paternity contained in those sections. *See* Tex. Prob. Code §§ 42, 53A–53E; Tex. Fam. Code §§ 160.201, .204.[5]

Statutes in force at the time of death generally govern the disposition of a decedent's estate. *See Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 507 (Tex. 2010); *Dickson. v. Simpson*, 807 S.W.2d 726, 727 (Tex. 1991). We agree that the Probate Code as it existed at the time of William Edward's death in 1960 did not provide inheritance rights to Barbara, who was born after the marriage between William Edward and Norma Jean had ended. *See* 1955 Tex. Gen. Laws at 102. At that time, only children born during a marriage or children whose parents married after birth were provided paternal inheritance rights. *See id*. The United States Supreme Court and the Texas Supreme Court, however, have held unconstitutional such statutory inheritance schemes. *See Trimble v. Gordon*, 430 U.S. 762, 771, 776 (1977); *Dickson*, 807 S.W.2d at 727–28.

---

[5] Section 42 of the Probate Code provides in relevant part that "[f]or the purposes of inheritance, a child is the child of his biological father if the child is born under circumstances described by Section 160.201, Family Code." Tex. Prob. Code § 42. Section 160.201 of the Family Code provides in relevant part that the "father-child relationship is established between a man and a child by . . . an unrebutted presumption of the man's paternity of the child under section 160.204." Tex. Fam. Code § 160.201(b)(1). Section 160.204 sets forth presumptions of paternity, including that a "man is presumed to be the father of a child if . . . he is married to the mother and the child is born before the 301st day after the marriage is terminated." *Id*. § 160.204(a)(2).

Citing the constitutional framework and analysis in the *Trimble* and *Dickson* opinions, Carole and Dennis Jr. state that Barbara was entitled to a "fair opportunity to establish her heirship," *see Dickson*, 807 S.W.2d at 728, but urge that she was not entitled to a retroactive application of current inheritance laws. *Ex Parte Abell*, 613 S.W.2d 255, 259–60 (Tex. 1981) (discussing retroactive laws); *Turner v. Nesby*, 848 S.W.2d 872, 875 (Tex. App.—Austin 1993, no writ) (alleged son of man who died in 1983 entitled to "'fair opportunity to establish [his] heirship'" but court sustained point of error "to the extent that it complains of retroactive application of the 1987 statutory amendment" to Probate Code (quoting *Dickson*, 807 S.W.2d at 728)). Appellants contend that this case should be resolved by applying a portion of section 42(b) of the Probate Code as it existed at the time of Ruby's death in April 1989, and that, under that version, Barbara had to prove paternal inheritance rights by clear and convincing evidence. Act of June 17, 1987, 70th Leg., R.S., ch. 464, § 1, 1987 Tex. Gen. Laws 2051 (current version at Tex. Prob. Code § 42). In their sixth issue, they also contend that the evidence that was properly admitted was not legally or factually sufficient to support a finding that there was clear and convincing evidence that Barbara was William Edward's daughter.

Section 42 as it existed at the time of Ruby's death stated in relevant part:

> Paternal Inheritance. For the purpose of inheritance, a child is the legitimate child of his father if the child is born or conceived before or during the marriage of his father and mother . . . so that he and his issue shall inherit from his father and from his paternal kindred, . . . in all degrees, and they may inherit from him and his issue. A person claiming to be an illegitimate child . . . may petition the probate court for a determination of right of inheritance. If the court finds by clear and convincing evidence that the purported father was the father of the child, the child is legitimate for purpose of inheritance. . . .

*Id.* Pursuant to this section, a child had paternal inheritance rights if the child was "conceived . . . during the marriage." *Id.* The evidence presented at trial supports a finding that Barbara was "conceived" during the marriage of William Edward and Norma Jean. *See id.* Applying the plain language of this section then, Barbara was the legitimate child of William Edward with inheritance rights to her paternal grandmother's estate. *See Hughes*, 246 S.W.3d at 625–26.

Carole and Dennis Jr. argue that the sentence addressing whether a child is legitimate does not apply here, characterizing the sentence as presumptive language of paternity that may not be applied retroactively.[6] They urge that the operative sentences are the following sentences that address a person "claiming to be an illegitimate child." Carole and Dennis Jr. contend that these sentences placed the burden on Barbara to present clear and convincing evidence that William Edward was her father. Viewing the plain language of this section as a whole, however, the latter sentences expressly applying to children "claiming to be illegitimate" must be viewed in the context of the preceding sentence. See *Parker*, 249 S.W.3d at 396. Viewing the sentences together, the trial court would not have erred by concluding that the latter sentences were inapplicable because Barbara was William Edward's legitimate child as legitimate child was defined in section 42 at the time of Ruby's death.

---

[6] The Family Code at the time of Ruby's death provided a rebuttable presumption when a child was conceived during a marriage, stating in relevant part: "A child is rebuttably presumed to be the legitimate child of a man if the child is born during the marriage or within the period of gestation following the dissolution of the marriage of the man and the mother of the child." Act of June 18, 1987, 70th Leg., R.S., ch. 689, § 4, 1987 Tex. Gen. Laws 2546, 2548, *repealed by* Act of April 20, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282 (effective April 20, 1995).

We also note that the trial court would not have erred by concluding that Barbara established her paternity inheritance rights by clear and convincing evidence. *See Worford*, 801 S.W.2d at 109 (when no findings of fact and conclusions of law following bench trial, courts of appeal must affirm judgment on "any legal theory that finds support in the evidence"). "Clear and convincing evidence is 'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (citing *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam); see *also In re J.F.C.*, 96 S.W.3d 256, 264–66 (Tex. 2002) (discussing legal and factual sufficiency review when clear and convincing standard of proof).

The Orchid Cellmark report showed more than a 99% probability of a father-daughter relationship. Even if the Orchid Cellmark report is not considered, Barbara also presented testimony and documents that supported a finding that William Edward was her father. Barbara's birth certificate identified William Edward as her father, William Edward acknowledged Norma Jean's pregnancy in his petition for divorce and that he was living with Norma Jean "as husband and wife" from November to "on or around January 3, 1959," and the trial court acknowledged Norma Jean's pregnancy and made a custody ruling concerning the expected child in the 1959 divorce decree. There also was evidence that William Edward financially supported Norma Jean and Barbara and that the Wallace family treated Barbara as William Edward's daughter until this litigation commenced. Based on this evidence, the trial court could have concluded that there was clear and convincing evidence to support Barbara's application for heirship. *See K.E.W.*, 315 S.W.3d at 20. On this basis, we overrule appellants' sixth issue challenging the sufficiency of the evidence.

10

*Evidentiary Rulings*

As part of their first and second issues and in their remaining issues, Carole and Dennis Jr. challenge the admission of the Orchid Cellmark report and the exclusion of testimony concerning alleged statements made by William Edward and Ruby. We review evidentiary rulings under the abuse of discretion standard of review. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (citing *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001)). The test for abuse of discretion is whether the trial court's ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998)). "Moreover, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (citing Tex. R. App. P. 44.1; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)).

*a)      Orchid Cellmark Report*

Carole and Dennis Jr. contend that the trial court erred in admitting the Orchid Cellmark report. They challenge the retroactive application of the current provisions of the Probate and Family Code addressing genetic testing and the self-authentication of genetic test reports. They contend that applying the current statutory scheme to the facts and circumstances in this case was "tantamount to an irrebuttable presumption of paternity where no such presumption previously existed." They also urge that the report is hearsay, that their due process rights were violated, and that the report should not have been admitted for the truth of the matter asserted without a sponsoring witness and without cross-examination.

11

Section 53B(a) of the Probate Code provides that a report ordered under section 53A that complies with section 160.504 of the Family Code is "admissible in a proceeding to declare heirship under this chapter as evidence of the truth of the facts asserted in the report." Tex. Prob. Code § 53B(a). Pursuant to section 160.504 of the Family Code, "[a] report of the results of genetic testing must be in a record and signed under penalty of perjury by a designee of the testing laboratory" and set forth the required "[d]ocumentation from the testing laboratory" to be "sufficient to establish a reliable chain of custody that allows the results of genetic testing to be admissible without testimony." Tex. Fam. Code § 160.504. Carole and Dennis Jr. have not raised complaint concerning the non-compliance of the report with the section 160.504 requirements for self-authentication.

Section 53B(b) of the Probate Code also provides that the presumptions under Section 160.505 of the Family Code apply to the results of genetic testing and that the presumptions may be rebutted as provided by that section. *See* Tex. Prob. Code § 53B; Tex. Fam. Code § 160.505. Subsections (a) and (b) of section 160.505 provide:

(a) A man is rebuttably identified as the father of a child under this chapter if the genetic testing complies with this subchapter and the results disclose:

(1) that the man has at least a 99 percent probability of paternity, using a prior probability of 0.5, as calculated by using the combined paternity index obtained in the testing; and

(2) a combined paternity index of at least 100 to 1.

(b) A man identified as the father of a child under Subsection (a) may rebut the genetic testing results only by producing other genetic testing satisfying the requirements of this subchapter that:

12

> (1)    excludes the man as a genetic father of the child; or
>
> (2)    identifies another man as the possible father of the child.

Tex. Fam. Code § 160.505(a), (b).  Carole and Dennis Jr. contend that applying these provisions retroactively amounted to an improper irrebuttable presumption that William Edward was Barbara's father when, at the time of Ruby's death, no such statutory presumptions existed.

Generally a statute is presumed to operate prospectively and not retroactively unless terms of the statute show a contrary intention and provided that its application does not result in the impairment of vested rights.  *See* Tex. Gov't Code § 311.022; *Ex Parte Abell,* 613 S.W.2d at 258, 260*;  Deacon v. City of Euless*, 405 S.W.2d 59, 61 (Tex. 1966); *In re A.L.J.*, 97 S.W.3d 833, 834 (Tex. App.—Dallas 2003, no pet.).  The enabling statute of sections 53A through 53E of the Probate Code provided that the sections were to apply to all proceedings to declare heirship that were pending or filed after September 1, 2007, the effective date of the Act.  *See* Act of June 16, 2007, 80th Leg., R.S., ch. 566, § 2, 2007 Tex. Gen. Laws 1032, 1034.  Because Barbara's application was pending on September 1, 2007, the trial court followed the law in applying those sections.  Further, providing procedures for genetic testing does not deprive a litigant of a vested substantive right.  *See Ex Parte Abell*, 613 S.W.2d at 260 ("[N]o litigant has a vested right in a statute or rule which affects remedy or is procedural in nature and which affects no vested substantive right.").  For pending heirship proceedings, litigants are provided the ability to utilize existing technology and objective scientific evidence to establish paternity.  We conclude that the trial court did not err by admitting the Orchid Cellmark report pursuant to the Probate Code sections addressing genetic testing.  *See* Tex. Prob. Code § 53A.

13

Appellants also argue that the current statutory scheme is constitutionally flawed as applied to the facts and circumstances of this case and that their due process rights were violated because they did not have the opportunity to cross-examine the report's author. Section 53B(c) of the Probate Code, however, provides in relevant part:

> A party to the proceeding who contests the results of genetic testing may call one or more genetic testing experts to testify in person or by telephone, videoconference, deposition, or another method approved by the court.

*Id.* § 53B(c). Although they had the opportunity to present testimony by deposition from the persons at Orchild Cellmark performing the testing or to present other expert testimony to contradict the report pursuant to this provision, Carole and Dennis Jr. did not do so.[7] *See id.*; *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex. 1987) ("Due process requires an opportunity to confront and cross-examine adverse witnesses." (citing *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970); *Baltierra v. State*, 586 S.W.2d 553, 556 (Tex. Crim. App. 1979))). On this record, we cannot conclude that their due process rights were violated.[8]

---

[7] In their briefing to this Court, Carole and Dennis Jr. argue that the genetic test used by Orchid Cellmark was "experimental" and "utter novelty" and they cite and provide copies of scientific literature to this Court that they contend raise substantial questions regarding the reliability and validity of the report. They did not present this evidence to the trial court, and our review is limited to the appellate record as filed. *See* Tex. R. App. P. 34.1; *Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied) ("[A]ppellate court cannot consider documents . . . that are cited in the brief and attached as appendices if they are not formally included in the record on appeal.").

[8] Barbara urges that Carole and Dennis Jr. should be estopped from arguing that the trial court erred by applying the current provisions of the Probate and Family Codes concerning genetic testing because they moved for the trial court to order the genetic testing under those provisions. Because we affirm the trial court's judgment on other grounds, we do not address this additional basis for overruling appellants' issues challenging the admission of the Orchid Cellmark report. *See*

14

Carole and Dennis Jr. cite *Villery v. Solomon*, 16 S.W.3d 106 (Tex. App.—Houston [1st Dist.] 2000, no pet.), to support their argument that the trial court violated their due process rights by admitting the Orchid Cellmark report as proof of paternity without a sponsoring witness. We find that case inapposite. *Villery* was decided prior to the enactment of sections 53A to 53E of the Probate Code, and due process was not addressed. Further, the DNA tests in that case were admitted into evidence. *Id*. at 109. The applicable Family Code section at that time contemplated that the tests would be conducted on the mother, the alleged father, and the child for the purposes of establishing paternity. *See id*. (citing Tex. Fam. Code Ann. § 160.102 (West 1996)). DNA testing was not done on the father. *Id*. In that context, our sister court stated that, given that no expert testimony was presented to explain the report, "the trial court did not err in refusing to make any assumptions" based on the DNA report, that the "conclusion of the report" was "at best, ambiguous," and that it was "clear that the results of the DNA tests were not conclusive." *Id*. at 109–10. In contrast, the genetic testing here was done on William Edward and Barbara and the report states on its face its conclusion that "there was more than a 99% probability that [William Edward] was Barbara's father." We overrule appellants' first, second, third, and fourth issues.

### b) *Excluded Testimony*

In their fifth issue, Carole and Dennis Jr. also challenge the trial court's exclusion of testimony concerning alleged statements made by Ruby and William Edward that would support a finding that Edward was not Barbara's father. Relying upon Texas Rule of Evidence 803(19), they argue that the alleged statements are not subject to the hearsay rule because evidence regarding such

Tex. R. App. P. 47.1.

matters is not excluded irrespective of the availability of the declarant. *See* Tex. R. Evid. 803(19) (evidence of "reputation concerning personal or family history" not excluded as hearsay even though declarant available as witness). Alternatively, they argue that the statements fall under the Rule 804 hearsay exception for statements of personal or family history made by a declarant who is unavailable. *See id*. R. 804(b)(3).

Because no findings of fact and conclusions of law were filed, we must presume that the trial court found the necessary facts to support the judgment. *See Sibley*, 111 S.W.3d at 52. Had the excluded evidence been admitted at trial, the trial court as the fact finder could have found that this evidence was not credible, crediting the conflicting evidence that William Edward and Norma Jean were living together as husband and wife at the probable time of conception, that Ruby treated Barbara as her granddaughter, and that no one in the family disputed that William Edward was Barbara's father prior to this litigation. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) (trial court as finder of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony). Even if we were to conclude then that the trial court erred in excluding this evidence, we cannot conclude that the failure to admit the evidence probably resulted in the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). We overrule appellants' fifth issue.

## CONCLUSION

Having overruled appellants' issues, we affirm the trial court's judgment declaring heirship.

16

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   August 28, 2013